RICHARD WILLIAM LAWLESS *v.* STATE OF MARYLAND

[No. 155, September Term, 1967.]

Decided April 15, 1968.

The cause was argued before MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

Joseph Montedonico for appellant.

Henry J. Frankel, Assistant Attorney General, with whom were Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County, Andrew L. Sonner, Deputy State's Attorney for Montgomery County, and Earl C. Hill, Jr., Assistant State's Attorney for Montgomery County, on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On August 27, 1964 R. Walter Linthicum left his dwelling about 8:00 A.M. His wife left about 9:30 A.M. Linthicum returned at 1:50 P.M. and, unlocking the front door, entered his home. He found that the master bedroom and den had been ransacked—furniture disarranged, bureau drawers on the bed and the contents dumped out and cabinets broken open. He called the police and while awaiting their arrival discovered that the rear door to the house was secure but that a pane of glass in the basement door, near the door knob, had been broken and the door was open. Access to the basement door from outside the dwelling was by way of a flight of steps leading down to it. A revolver and holster valued at $56 and at least $48 in cash were missing. The pane of glass from the basement door was

on the steps near the bottom of the stairwell and a fingerprint expert from the Identification Bureau of the Montgomery County Police Department found latent fingerprints on it. They proved to be the fingerprints of Linthicum, the appellant and Bernard Railey. The appellant and Railey were indicted on April 6, 1966 charged with breaking a dwelling house in the daytime with intent to steal (1st count), grand larceny (2nd count) and receiving stolen goods to the value of $100 or upwards (3rd count).[1] The appellant was found guilty of grand larceny by a jury in the Circuit Court of Montgomery County on May 18, 1967 and sentenced to imprisonment for a term of 4 years.[2]

On appeal the appellant contends:

I. The evidence was not sufficient to sustain the conviction.
II. He was denied a speedy trial.

---

1. The record shows that one of the latent fingerprints lifted from the glass was identified as that of appellant by comparison with rolled ink fingerprints of the appellant taken by the police on May 13, 1967. In the appellant's brief it is stated that he had been confined in the Maryland House of Correction since January 20, 1966 although no evidence was produced to this effect.

2. The indictment noted that the offense charged in the 1st count was in violation of Md. Code, Art. 27, § 32. Prior to the enactment of Chapter 345 of the Acts of 1965 that section applied to a dwelling house. See also Art. 27, § 30 as amended by Chapter 345 of the Acts of 1965. The offenses proscribed by § 32 and by § 466 (receiving stolen goods of the value of $100 and upwards) were misdemeanors, but were designated felonies as of June 1, 1966 by Chapter 628 of the Acts of 1966. Prior to the appellant's trial he moved to dismiss the 1st and 3rd counts of the indictment on the ground that limitations had run. The State thereupon "abandoned" those counts. However, we note that at the time the appellant was alleged to have committed the crimes charged in the "abandoned" counts, although they were misdemeanors, punishment was by confinement in the penitentiary. See Md. Code (1964 Repl. Vol.), Art. 57, § 11; Kares v. State, 215 Md. 396.

The docket entries show that on May 3, 1966 Bernard Railey filed a "plea of insanity" and an order for his examination was passed on May 16, 1966. On August 30, 1966 he was ordered to be tranported to the Montgomery County Detention Center and on November 16, 1966, on motion by the State, the indictment against him was stetted.

III. His constitutional rights were "violated by the State's taking his fingerprints without notifying counsel of record".

I

The jury could find that the appellant had been at the basement door of the dwelling at some time from the evidence that his fingerprint was impressed on the pane of glass broken from the door where entry was gained. The print was properly admissible in evidence and its weight was a matter for the trier of facts. See *Breeding v. State,* 220 Md. 193, 199; *Debinski v. State,* 194 Md. 355, 359. However, the evidence must also be sufficient to show or to support a rational inference that the appellant was the criminal agent, for "[i]t is generally recognized that fingerprint evidence must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime". *McNeil v. State,* 227 Md. 298, 300.

This rule has been applied in Maryland. In *McNeil v. State, supra,* McNeil's print, not more than 18 hours old, was found on a partially empty beer bottle near a damaged safe in a tavern that had been broken into and ransacked, which bottle had not been there on a previous visit of the proprietor several days before. The evidence was held to be sufficient. In *Musgrove v. State,* 3 Md. App. 54, the print of the appellant was found on a rifled jewelry box in a ransacked apartment. There was no evidence of a breaking of the apartment, keys to which were in the possession of the resident manager of the apartment and three occupants of the apartment. One occupant testified that he did not authorize the appellant to enter the apartment and, in fact, did not see him or know him. The other occupants of the apartment did not testify. A repairman had been lawfully in the apartment on the day of the crime but did not testify. We held that those circumstances were not sufficient to exclude the hypothesis that the print was impressed at a time other than that of the crime.

The rationale of the rule has been followed in other jurisdictions in a variety of factual situations when the fingerprint of the defendant was found at the scene of the crime. Evidence was found to be sufficient to prove that the accused was the

criminal agent in a number of cases. In *Grice v. State,* 142 Tex. Crim. 4, 151 S. W. 2d 211 (1941) the print was found on a pane of glass removed at the time of entry into a store. Its location on the glass was in such a place as would be covered by molding when the glass was in place. It was immaterial, therefore, that the defendant had used the door frequently to lawfully enter the premises. In *State v. Connors,* 87 N. J. Law 419, 94 A. 812 (1915) the prints were found on a balcony post leading from the second story of a house. Also the defendant was shown to have been in town on the day of the burglary. In *People v. Taylor,* 32 Ill. 2d 165, 204 N. E. 2d 734 (1965) the prints were found on the inside lower window sash of a basement apartment, where a rape had occurred, in such position as to indicate they were left by a person opening the window from the outside. The window was not readily accessible to the public. The court said that "the unexplained presence of the defendant's prints is not consistent with any reasonable hypothesis of innocence." In *People v. Rodis,* 145 Cal. App. 2d 44, 301 P. 2d 886 (1956) the print was found on the outside of a window more than 9 feet from the ground at the rear of a burglarized store. Entry was gained through the window by removing a screen covering the window and some cardboard replacing a previously broken pane. The court held that the physical location of the print by itself was sufficient proof of the identity of the burglar. In *State v. Tew,* 234 N. C. 612, 68 S. E. 2d 291 (1951) the prints of the defendant, whom the service station attendant had never seen before, were found on glass broken out of the front door of a service station. In *State v. Helms,* 218 N. C. 592, 12 S. E. 2d 243 (1940) the prints were found on a window through which entry was made into a dwelling. The defendant's evidence that he had painted the window shortly before the crime was committed was rebutted by evidence of the State that the window had been thereafter washed. The court said that the question of resolving beyond a reasonable doubt that the print could only have been impressed on the window at the time the crime was committed was a matter for the jury. He was convicted of burglary and larceny.

Other cases have held that the evidence was not sufficient to sustain a conviction. In *McGarry v. State,* 82 Tex. Crim. 597, 200 S. W. 527 (1918) a window pane broken during a robbery contained the defendant's prints. The court held that this was insufficient to prove the defendant was the robber when it was shown that the pane was in a place accessible to the general public and the pane contained other prints. See also *Davis v. State,* 125 Tex. Crim. 6, 66 S. W. 2d 343 (1933). In *Anthony v. State,* 85 Ga. App. 119, 68 S. E. 2d 150 (1951) the prints were found on the money boxes of a pinball machine and music box from which money had been stolen after a restaurant had been broken into. It was not shown whether or not there were other prints on the money boxes, where on the machines the money boxes were located or whether the prints were on the outside or inside of the money boxes. Therefore, the court said, it could not be determined whether the prints could have been impressed only at the time of the crime. In *State v. Minton,* 228 N. C. 518, 46 S. E. 2d 296 (1948) the prints were found on a glass door broken at the time of the crime. The place entered was a public place, prints other than the defendant's were found on the pane, and the defendant had been lawfully on the premises earlier that night during business hours. The evidence was held to be insufficient. In *State v. Gilliam,* 240 S. C. 311, 140 S.E. 2d 480 (1965) prints found on a broken window pane were held to be insufficient where the evidence did not show that entry was gained through that window. In *Ivey v. State,* 176 So. 2d 611 (Fla. 1965) the only evidence of identity was a print found on a glass jalousie on the front door of a burglarized store building. The court felt that the print could have been made at any time prior to the crime despite the defendant's statement that he had never been in the town where the store was located.

From the cases considered, we think it clear that the "fingerprint evidence found at the scene of the crime" as stated in the rule enunciated in *McNeil v. State, supra,* refers only to that evidence which proved that the print was that of the accused. Thus the "circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime" need not be circumstances completely independent

of the fingerprint, and may properly include circumstances such as the location of the print, the character of the place or premises where it was found and the accessibility of the general public to the object on which the print was impressed. A latent fingerprint found at the scene of the crime, shown to be that of an accused, tends to show that he was at the scene of the crime. The attendant circumstances with respect to the print may show that he was at the scene of the crime at the time it was committed. If they do so show, it is a rational inference, consistent with the rule of law both as to fingerprints and circumstantial evidence,[3] that the accused was the criminal agent. While a defendant does not have the obligation to testify himself or to offer testimony to explain the presence of his prints, a court cannot supply evidence that is lacking. *United States v. Hayes,* 385 F. 2d 375 (4th Cir. 1967). We also feel that the rule in *McNeil* does not compel the State to negative every conceivable possibility that an accused, shown to be at the scene of a crime by his fingerprint, was present other than at the time of the commission of the crime. The fingerprint evidence, as we construe it, need be coupled only "with evidence of other circumstances *tending* to *reasonably* exclude the hypothesis that the print was impressed at a time other than that of the crime" (emphasis added). The rule does not require under all circumstances in every case that the State affirmatively and conclusively prove that the accused could *not* have been there other than a time when the crime was committed. Thus, in view of the other circumstances, it may not be necessary for the State to produce evidence by *each* person who may have authority or apparent ability to admit an accused to the premises lawfully, that he did not authorize that person to enter the premises.

In the instant case the *corpus delicti* of the larceny was proved. The question is whether the evidence was sufficient to show that the appellant was the criminal agent. The premises from which the goods were stolen was a private residence not ac-

---

3. "And when guilt is based solely upon circumstantial evidence, the circumstances, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence". *Vincent v. State,* 220 Md. 232; See *Corens v. State,* 185 Md. 561, 572.

cessible to the general public. Entry was gained through a basement door, at the bottom of a stairwell. The door was opened by breaking a pane of glass in the door. The appellant's print was found on the pane. The prints of two other people were also found on the pane. One was the owner of the premises and the other a person also charged with the offense. It is clear that the evidence tended to show that the appellant was at the scene of the crime. By the location of the basement door and the print, it was a rational inference that he was there unlawfully, and there was no evidence to the contrary. The owner of the premises said that he had not given the appellant or "anyone that looks like him permission to go into" the house on the date of the crime or "at any time." We think, therefore, that the evidence before the jury was sufficient for them "to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime" and to find that the appellant entered the premises on the day charged and stole the goods. We feel that there was relevant evidence given to the jury to sustain the conviction and, since, in order to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence, it is necessary that there be no legally sufficient evidence or inferences drawable therefrom from which the jury could find a defendant guilty beyond a reasonable doubt, we hold that the lower court did not err in denying the motion for judgment of acquittal and affirm the judgment. *Agresti v. State,* 2 Md. App. 278; *Tillery v. State,* 3 Md. App. 142.

## II

From the record before us we do not find that the appellant was denied a speedy trial. He was indicted on April 6, 1966. A copy of the indictment was "handed" to him on March 1, 1967 on which date counsel was appointed to represent him. On March 9, 1967 he filed a motion for discovery which was granted on April 6, 1967 and answered by the State on April 17, 1967. He was tried on May 18, 1967. The issue of a speedy trial was first raised by oral motion to dismiss the indictment on the day of his trial. There is no explanation in the record why the appellant was not given a copy of the indictment until March 1, 1967. The record does not show whether or not he knew that he had been indicted prior to that date. His counsel alleged in

argument that the appellant was not notified that he was indicted and further alleged to the court that "in fact he was incarcerated either in Prince George's County or in the House of Correction" during the period from the filing of the indictment to its delivery to him. In *Fabian v. State,* 3 Md. App. 270, we fully discussed the rules of law pertaining to a speedy trial, noting that generally it is only after a prosecution has been initiated that the issue of a speedy trial can be raised by a defendant and that even when the right accrues to him, he may waive it by failing to demand it or, having demanded it, he may waive it by his conduct thereafter. We held that when an accused does not make a demand for a speedy trial, he must show that he has suffered actual prejudice caused by the undue delaying tactics of the State. Absent such a showing, the right to a speedy trial has not been denied him. The appellant here has made no such showing.

### III

There is no merit in the appellant's contention that his "constitutional rights" were violated by the "State's taking his fingerprints without notifying counsel of record". There is no constitutional proscription against compelling an accused to submit to fingerprinting, *Musgrove v. State, supra,* at page 58, and the appellant concedes this. He argues, however, that counsel must be present when the fingerprints are taken, and urges that the rationale of *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L.Ed. 2d 1149, *Gilbert v. California,* 388 U. S. 263, 87 S. Ct. 1951, 18 L.Ed. 2d 1178, and *Stovall v. Denno,* 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199, is apposite. We do not agree. The "innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial" which the Court in *Wade* found to be inherent in "the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence" (388 U. S. at 228) are in no sense present in the taking of the fingerprints of an accused. Nor does the appellant allege that the fingerprints were improperly taken or that those admitted in evidence were not his or were in any way inaccurate. We find no prejudice to the appellant in the taking of his fin-

gerprints out of the presence of his counsel or in the admission of them in evidence.

*Judgment affirmed.*