## JOHN RHODES McGHEE *v.* STATE OF MARYLAND

[No. 257, September Term, 1967.]

*Decided June 3, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*Benjamin L. Brown* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *John H. Lewin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant was convicted by the court sitting without a jury of (a) daytime housebreaking committed on May 23, 1967, and

(b) with being a rogue and vagabond on June 2, 1967. He was sentenced to five years under the jurisdiction of the Department of Correction for the housebreaking offense and was given an eighteen-month consecutive sentence under the rogue and vagabond charge. He contends on this appeal that the evidence was insufficient to support either conviction.

### The Housebreaking Offense

There was evidence adduced at the trial to show that Joseph Kutlik left his home on May 23, 1967 at approximately 9:20 a.m. with his wife to go shopping, securing the house as he left; that when they returned approximately one hour later, they found the glass in the door broken, the house ransacked, and certain items taken; that a locked strong box owned by Mr. Kutlik, and located in his second floor back room in a chiffonier, had been pried open; and that two latent fingerprints, removed from the strongbox by the police on the day of the crime, were identified as those of the appellant. Appellant denied having committed the crime and testified that when the police questioned him on June 14 about the offense, he was caused to place his hands on the box, thus explaining the presence of his fingerprints. There was evidence that the fingerprint comparison had been made prior to June 14.

It is well settled that fingerprint evidence must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime. See *McNeil v. State,* 227 Md. 298. In *Lawless v. State,* 3 Md. App. 652, we concluded that such "other circumstances" need not be those completely independent of the fingerprint, and may properly include circumstances such as the location of the print, the character of the place or premises where it was found and the accessibility of the general public to the object on which the print was impressed. We there said:

> "A latent fingerprint found at the scene of the crime, shown to be that of an accused, tends to show that he was at the scene of the crime. The attendant circumstances with respect to the print may show that he was at the scene of the crime at the time it was com-

mitted. If they do so show, it is a rational inference, consistent with the rule of law both as to fingerprints and circumstantial evidence, that the accused was the criminal agent."

To like effect, see *Mills v. State,* 3 Md. App. 693; *McCargo v. State,* 3 Md. App. 646; *Hannah v. State,* 3 Md. App. 646; *Musgrove v. State,* 3 Md. App. 54.

The evidence showed that the victim did not know the defendant and had never seen him before the crime. The strong box upon which appellant's fingerprints were found was an object of such character, and so located within the victim's home, that we conclude that the evidence of appellant's fingerprints was sufficient in the circumstances of this case to support the conviction, the breaking being clearly established, and the time between such breaking and the discovery of the crime being a little more than one hour.

### The Rogue and Vagabond Conviction

The evidence showed that on June 2, 1967 at approximately 10:30 a.m., Detective Moore was driving his vehicle when he observed an individual, later identified as Mark Davis, on the porch of 2544 Boarman Avenue in Baltimore City. He also then observed the appellant standing on the street alongside the house. Moore made a U turn, coming back to the scene and, after observing Davis place his hands on the door, called him over to ask what he was doing. Davis told the officer that he was looking for James Montgomery. At this time, Moore observed a combination hammer and screwdriver sticking out of Davis's pocket.

It was established at the trial that no James Montgomery lived at 2544 Boarman Avenue and no one by that name was known in the neighborhood. It was also established that when Detective Moore passed the appellant, he was going in a northerly direction and that when the officer made his U turn, appellant turned around and proceeded in a southerly direction.

Mrs. Anne Inbinder, whose home is directly across the street from the above mentioned address, testified that on the morning in question, she was sitting in her living room and observed through her window appellant and Davis go up to the porch at

2544 Boarman Avenue. One remained on the porch and the other walked a short distance away, keeping watch on the house.

Mrs. Bertha Dieterway, another eyewitness, testified that she saw both men walking down the street together and that Davis went on to the porch and appellant went to the back yard.

Appellant testified on his own behalf that he resided in the area and that he was returning from a shoe shop; that he had been with Davis earlier, and that when he saw him on the porch, he stopped and waved; and that he had no knowledge of any intention of Davis to burglarize the premises or to act in concert with him.

In finding appellant guilty of being a rogue and vagabond, the trial judge stated that the evidence proved to him that Davis was about to break into the house when he was observed by Moore; that Davis had a typical burglar's tool upon him when apprehended, namely a hammer with a screwdriver built into it, with a deafening device on the striking part of the hammer; that appellant's participation in the crime was as an accomplice; and that he was a lookout. As there was evidence showing that appellant was on the porch of the home with Davis, and later was seen in the back yard, and that Davis had a burglarious implement in his possession, we think the conviction could, under the circumstances, have been based upon that part of the rogue and vagabond statute (Section 490 of Article 27 of the Maryland Code) proscribing any person from being found "in or upon any dwelling house * * * or in any enclosed yard or garden or area belonging to any house, with an intent to steal any goods or chattels, * * *." See *Thomas v. State*, 1 Md. App. 528; *Allen v. State*, 2 Md. App. 740. We also think that appellant was properly convicted under that part of the rogue and vagabond statute pertaining to the apprehension of any person having "upon him," *inter alia*, implements "at places and under circumstances from which an intent may be presumed feloniously to break and enter into any dwelling house, * * *." In this connection, we have held that it is not necessary to prove actual physical possession of such burglarious instruments at the time of the arrest, an inference drawn from proper evidence sufficing to establish the requisite elements of the offense. See *Shipley v. State*, 243 Md. 262; *Woodell v. State*, 2 Md. App.

433; *Thomas v. State, supra.* Appellant's involvement with Davis on the porch of the home and his subsequent actions at the scene of the crime, including the fact that he was observed walking up and down the front of the house in such a manner as to suggest that he was a lookout, are evidentiary factors giving rise to an inference that appellant shared a common criminal purpose with Davis, namely to break into the house in question, and, consequently, appellant would properly be chargeable with having "upon him" the burglarious implement actually found upon appellant's confederate Davis at the time of that individual's arrest. See also *Day v. State,* 2 Md. App. 404; *Allen v. State,* 2 Md. App. 740.

*Judgments affirmed.*