JERRY JEROME ROGERS, a/k/a WAYNE THEO-DORE SMITH, AND FRANK ASHTON HAWK-INS *v.* STATE OF MARYLAND

[No. 405, September Term, 1968.]

*Decided June 3, 1969.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*M. Michael Maslan,* with whom was *Jerome W. Taylor*
on the brief, for appellants.

*James L. Bundy, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General, Samuel
A. Green, Jr., State's Attorney for Baltimore County,*
and *Clewell Howell, Jr., Assistant State's Attorney for
Baltimore County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

There is no question as to the *corpus delicti* of the
crime involved in this appeal. The Goodyear Service
Store, Inc. at 5645 Baltimore National Pike in Baltimore
County was broken into on 4 October 1967 between 9
P.M. and 10:30 P.M. and property of the corporation, in-
cluding 14 television sets, 4 radios, a phonograph, a
walkie talkie, a blender, an electric wrist watch and a
drill kit, of a total market value of $1,751.65, was stolen.
The breaking took place "on the side of the building to
the rear, through a glass bay door leading into the grease
room * * * The glass in the inside door leading from the
grease room into the store itself was also broken out."
No one was apprehended at the scene of the crime, there
was no evidence that anyone had been seen at or near
the scene about the time of the breaking, no one was
found in possession of the stolen goods and no one con-
fessed to the crime. The question facing the police was
who were the criminal agents. The police observed that
the bottom right hand window of the bay door, as you
face it from outside the building, had been broken. A
piece of glass remained in that window. There was "an
aluminum-type frame around the window and the glass
is held in with a one piece rubber gasket." The investi-

gating officer assigned as a criminal investigator with the Maryland State Police, was familiar, as a result of 17 years experience, "with the characteristics of this method of securing glass in a door." He testified: "If the glass were in one piece you would have to remove first the rubber gasket that holds it into the frame." That method had not been used here. "The window had obviously first been broken and then the pieces, the slivers of glass, had been removed * * * [the burglars] first broke the glass in the bay door, removed the glass in order to permit entry to the building * * * The glass had been piled in a pile right below where the window had been broken. There were some cartons sitting there and the glass was found stacked up." The officer "found numerous latent fingerprints contained on these particles of glass on the window that had been removed on the glass bay door." They had been put on the glass "very recently. I couldn't pin it down in a matter of hours * * * They were on both sides of the glass * * * The inside of the glass was less weathered." On cross-examination of the officer it was elicited that the window which had been broken was approximately three feet from the ground when the door was closed; it was the first window above the solid bottom panel of the door. While someone passing by, "swinging their arms, could have conceivable touched the glass with their hands," before it was broken, and put their prints on the pane, they could not have been so put on "in the fashion these prints were found on these glass fragments * * * They would have been smudges." There were "a goodly number of prints on this glass," which had been broken in a number of pieces. The largest piece was about 10 inches square. Only fragments of glass were found inside the bay door, no large pieces. The officer could not tell whether the window had been broken from the outside or the inside of the building. When the officer first saw the door it was closed and locked.[1]

---

1. The door was electrically operated and opened upward, sliding into the ceiling.

A fingerprint identification expert of the Maryland State Police received 14 latent fingerprints lifted from the glass by the investigating officer, "of which six latent prints were evaluated for comparison purposes." He also received three cards containing the rolled fingerprints of Frank Hawkins, Wayne Smith and William Oscar Franklin. Two of the latent prints were those of Hawkins and one was that of Smith. A card bearing rolled prints of Jerry Jerome Rogers was also received by him. The prints on the card in the name of Rogers and those on the card in the name of Smith were made by the same person. The latent prints of Hawkins were his right middle finger and right index finger. That of Rogers was his left ring finger. No identification was made of any other prints although all the latent prints submitted were checked. The latent prints identified all came from the glass of the bay door. Latent prints had also been lifted off a radio left on a shelf in the store and "from around the glass door" inside the store but these were not identified as belonging to Rogers or Hawkins. The other latent prints submitted were identifiable— "there were 16 fingerprints of value all told." Of three latent prints which could not be identified, one came from a salesroom door and two from the bay door. It was established that the rolled prints with which the latent prints were compared were obtained from Rogers alias Smith and Hawkins on 12 October 1967 in the State Police Barracks in Annapolis.[2]

The trial court sitting as a jury in the Circuit Court for Baltimore County convicted each of the appellants of storehouse breaking with intent feloniously to steal and sentenced each of them to imprisonment for 10 years "to run concurrent with their present sentence." Appealing from the judgment, each of Rogers and Hawkins claim that the evidence was not sufficient to sustain his conviction. We agree.

In *Lawless v. State,* 3 Md. App. 652 we reviewed at length cases in this and other jurisdictions involving the

2. The appellants offered no evidence.

question of the legal sufficiency of fingerprint evidence to convict and we have considered the question in a number of cases.[3] We said in *Lawless* at page 659:

"\* \* \* A latent fingerprint found at the scene of the crime, shown to be that of an accused, tends to show that he was at the scene of the crime. The attendant circumstances with respect to the print may show that he was at the scene of the crime at the time it was committed. If they do so show, it is a rational inference, consistent with the rule of law both as to fingerprints and circumstantial evidence, that the accused was the criminal agent. While a defendant does not have the obligation to testify himself or to offer testimony to explain the presence of his prints, a court cannot supply evidence that is lacking. *United States v. Hayes*, 385 F. 2d 375 (4th Cir. 1967). We also feel that the rule in *McNeil*[4] does not compel the State to negative every conceivable possibility that an accused, shown to be at the scene of a crime by his fingerprint, was present other than at the time of the commission of the crime. The fingerprint evidence, as we construe it, need be coupled only 'with evidence of other circumstances *tending* to *reasonably* exclude the hypothesis that the print was impressed at a time other than that of the crime' (emphasis added). The rule does not require under all circumstances in every case that the State affirmatively and conclusively prove that the accused could *not* have been there other than a time when the crime was committed. Thus, in view of the other circumstances, it may not be necessary for the State to produce evidence by *each* person who may have authority or apparent ability to admit an accused to

---

3. See *Edmonds and Stanley v. State*, 5 Md. App. 132, note 3 at 143.
4. *McNeil v. State*, 227 Md. 298.

the premises lawfully, that he did not authorize that person to enter the premises."

Due to the protean circumstances existent in other cases, the rule can only be applied in light of the facts of a given case and a case determined on its own facts as established. However, in each of the cases in which we found that the evidence was sufficient to support the conviction, there was more evidence than in the instant case of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime, as, for example, in *Edmonds and Stanley v. State,* 5 Md. App. 132. There the same storehouse, as in the instant case had been entered on 10 June 1967, apparently through the same bay door, by breaking out a pane of glass and goods of the value of $2200 stolen. The glass had also been neatly stacked by the door. An office within the building had also been entered by cutting out a pane of glass. There was expert testimony that latent prints found on the glass from the bay door were so located "that whoever removed the glass deposited these prints on same, because I received prints from both sides of the glass at the edge in a way that it would have to be placed on there by the subjects who removed the glass from the door." The prints were less than a day old and the crime had been committed within a seven hour span between 12:15 A.M. and 7:50 A.M.; the latent prints were lifted about 9:00 A.M. The latent prints on the glass from the bay door were shown to be those of the defendants *and* a latent print found on the glass cut out of the inner office was shown to be that of one of the defendants. In *Lawless v. State, supra,* the premises broken were a private residence not accessible to the general public. Entry was gained through a basement door at the bottom of a stairwell. The door was opened by breaking a pane of glass in the door and the defendant's print was found on the pane. Two other prints were found on the pane. One was identified as that of the owner of the premises and the other that of a person also charged with the crime. The owner had not given the defendant permis-

sion to go into the house "at any time." In *Fladung v. State,* 4 Md. App. 664, a window in a school classroom was broken. The classroom was not visible from the road. The defendant's print was the only one lifted from the broken pane and was so positioned on the inside of the window as to make it reasonably inferable that the person who entered the building was the same person who left his print thereon. As the print was on the inside of the window, it was not located in an area readily accessible to the general adult public. In *Couser v. State,* 4 Md. App. 543, entry to a storehouse was gained by removing a metal sign covering a window fastened flush against the building. The defendant's fingerprint was found on the side of the sign that was against the building and it was shown that the print could not have been placed there from within the building and could have been impressed from the outside of the building only by removing the sign. In *McGhee v. State,* 4 Md. App. 256, glass in a door to a dwelling was broken, the house ransacked and goods stolen. The defendant's fingerprints were found on a strongbox which had been pried open and which was located in a chiffonier in a second floor back room. The owner of the dwelling did not know the defendant and had never seen him before the crime. In *McCargo v. State,* 3 Md. App. 646, the circumstances shown were that a building was entered by the breaking of a rear door, giving access to that part of the building from which goods were stolen, that the breaking and larceny occurred within the same period of time, that the defendant's fingerprints were located on the inside of glass panels in cabinets from which the articles were stolen and that the appellant could not explain how his prints got on the cabinets. In *Hannah v. State,* 3 Md. App. 325, where the defendant was convicted of arson and burglary of a church, the defendant's fingerprints were impressed on a charred picture found in the church in a place where it did not belong, which place was accessible only to members of the teaching staff. The prints had been impressed between 12 to 24 hours before they were lifted. The defendant denied that he had ever been in the church

but said that he heard the fire engines and went to the scene of the fire.

In the instant case during the testimony of the investigating officer he said that the prints on the glass from the bay door "were in such a position that it indicated to me that the persons removing the glass from the window had to be the ones to put the prints on the glass." He was asked by the State what he meant by that. He started to tell what the position of the prints indicated when objection was made and sustained. He was asked where the prints were on the glass and said "on both sides." The State observed that in answering "you are holding your hands up in this manner (indicating)" and wondered "what you meant." Objection was made and sustained, the court saying, "All I want to know is where were the fingerprints on the glass? On both sides?" The witness said, "Yes, sir." The State asked, "Could these prints have been put on the glass in this form before it was broken?" His answer was stricken on objection. The court remarked that it thought it "rather immaterial, but, using the court's knowledge itself of this situation, and admitting an unusual circumstance, it is possible someone could have put a print and gone on the other side and put another print. Therefore, you can't say it is a definite thing that the glass had to be broken in order to have this done. I admit—and that is your question—that this is one method and maybe the most logical method, but it is not the only way fingerprints could have been put on this glass." Thus on the record, while it is clear that latent prints were found on both sides of the glass, there is lacking what was present in *Edmonds and Stanley v. State, supra,*—evidence from which the court could properly find that the prints on the glass would have to be placed there by the persons who removed the glass from the door — and what was present in *Fladung v. State, supra,*—that the person who entered the building was the same one who left his print on the window— and what was present in *Couser v. State, supra,*—that the one who removed the sign, enabling entry to the build-

ing, was the one who left the print on the sign. Further, it was never established that it was the prints of the appellants which were on both sides of the glass. It is patent that since only one print of Rogers was identified, his print could only have been on one side of the glass, and whether on the inside or outside was not disclosed. While two prints of Hawkins were identified, there was no evidence that one print was on the inside of a glass fragment and one on the outside of the same fragment,[5] or whether one was on the inside of one fragment and the other on the outside of another fragment or whether both were on the inside or outside of one fragment or whether one each was on the inside of two separate fragments or on the outside of two separate fragments. In short, the record is devoid of evidence as to the position of the appellants' prints on the glass; it may well have been that it was the unidentified prints that were on both sides of the glass. The cards bearing the latent prints of the appellants which were admitted in evidence show only that they were lifted from the "glass-bay door." Although "numerous latent prints" were found on the pieces of glass,[6] only those three prints of the appellants were identified, unlike the identifications in *Lawless*, although it appeared that the other latent prints submitted were identifiable. No prints found in the building were identified as those of either appellant as was done in *Edmonds and Stanley*, *McGhee*, *McCargo*, and *Hannah*. It was not shown that the place of entry at which the prints were found was not accessible to the general public as in *Lawless* and *Fladung*.[7] It was not shown that the glass in the bay door was in fact broken from the inside or the

---

5. Since the prints of Hawkins were both from the fingers of his right hand and were of the middle finger and index finger, it would appear to be physically impossible that they were impressed at the same time, one on each side of the same piece of glass, by holding that piece of glass.

6. The identification expert said he received fourteen. At another point in his testimony he said that "there were sixteen fingerprints of value all told."

7. In *Edmonds and Stanley v. State*, *supra*, it was stated that the door, which appears to be the same door here involved, was located in an area accessible to and used by the general public.

outside of the building. There was no distinction made in the investigating officer's testimony between the appellants' prints and the other latent prints found as to the time they were impressed on the glass. His testimony as to the time of impression—"they had recently been put on the glass * * * very recently"—applied, in the context in which the statement was made, to all the latent prints found.

The record does not disclose that the trial court made any findings of fact in disposing of the appellants' motion for judgment of acquittal. In rendering its verdict of guilty the Court said:

> "The evidence produced at this time is the fact that on October 4, 1967 there was a breaking, there was glass found, and an opening in a glass door. On the pieces of glass were found and positively identified the prints of both of the Defendants regardless of how many prints there were to identify, and it placed those persons in the vicinity. There is also testimony these were recent prints. There is also testimony at that time there were goods taken from the Goodyear Company. Over $1000 worth of merchandise was taken away at that particular time. All of these things amount to enough evidence to convict the two Defendants of the crime as charged."

We think the trial court was clearly wrong in its judgment on the evidence that the appellants were the criminal agents. We feel that the evidence before the court was not sufficient for it "to reasonably exclude the hypothesis" that the prints of the appellants were impressed at a time other than that of the crime and to find that they broke the storehouse as charged. We recognize the integrity of fingerprint identification, but here, although it tended to show that the appellants had been at the scene of the crime, it was not coupled with attendant circumstances sufficient to show that they were at the scene of the crime at the time it was committed, so as to give rise

to the rational inference, consistent with the rule of law both as to fingerprints and circumstantial evidence, that they were the criminal agents. The judgments must be set aside. Md. Rule 1086.

> *As to each appellant: judgment reversed and case remanded for a new trial.*