**Eugene Parker FIELDS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1012.**

Supreme Court of Alaska.

March 2, 1970.

Murphy L. Clark, Anchorage, for appellant.

Harold Tobey, Dist. Atty., Kenneth O. Jarvi, Asst. Dist. Atty., Anchorage, for appellee.

Before DIMOND, RABINOWITZ, BONEY and CONNOR, JJ.

## OPINION

BONEY, Justice.

Appellant, Eugene Parker Fields, was tried by a jury pursuant to an indictment charging him with one count of robbery [1] and one count of larceny.[2] At the trial, after all testimony had been heard, the defense moved to dismiss both counts of the indictment; the motions were denied. On April 9, 1968, the jury returned a verdict of guilty against Fields on both counts. Fields now appeals the conviction.

The facts of the case may be stated briefly. The 515 Club, an Anchorage bar, was at the time relevant to this appeal

---

1. AS 11.15.240 provides:
 A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

2. AS 11.20.140 provides:
 A person who steals money, goods, or chattels, or a government note, a bank note, promissory note, bill of exchange, bond, or other thing in action, or a book of accounts, order or certificate concerning money or goods due or to become due or to be delivered, or a deed or writing containing a conveyance of land or interest in land, or a bill of sale, or writing containing a conveyance of goods or chattels or interest in them, or any other valuable contract in force, or a receipt, release, or defeasance, or a writ, process, or public record, which is the property of another, is guilty of larceny. Upon conviction, if the property stolen exceeds $100 in value, a person guilty of larceny is punishable by imprisonment in the penitentiary for not less than one nor more than 10 years. If the property stolen does not exceed $100 in value, the person, upon conviction, is punishable by imprisonment in a jail for not less than one month nor more than one year, or by a fine of not less than $25 nor more than $100.

owned by Truman Chance, and was normally open from 8:00 a. m. until 5:00 a. m. At 8:00 o'clock on the morning of December 11, 1967, Mr. Chance opened the club as usual, and shortly thereafter two customers arrived. At about 8:20 a. m., two masked men entered the club through a rear entrance. One proceeded to barricade the front door of the bar with a pinball machine. The second masked intruder was armed with a pistol and ordered Chance and his two customers to stand still.

The armed man told his partner to take Mr. Chance's billfold from him. Once this was accomplished, Chance and his two customers were ordered into the men's restroom; after they had entered, the door was shut and barricaded from the outside. Meanwhile, Robert Blaney, another customer, entered the club through its rear door; he was immediately confronted by the armed man and forced to join the others in the restroom.

The four men remained in the barricaded room for several minutes. After Chance heard the robbers exit through the back door of the club, the restroom door was broken down and the four captives emerged to find that all of the money had been emptied from the two cash registers and the phones had been pulled off of the wall. The cash taken from the registers amounted to over $2,200.00. The police were summoned and upon their arrival it was further discovered that about $40.00 had been taken from a drawer located behind the bar, across from one of the registers. That drawer also contained a small file box where customers' I.O.U.s were kept.

Apparently the club had a policy of accepting I.O.U.s from its regular customers. When a customer needed cash he was furnished a tablet of plain white paper. On one of the slips of paper, the customer would fill in his name, the date and the desired amount, and then present the I.O.U. to the bartender on duty, who would pay the requested money and place the I.O.U. under the change tray in the cash register.

Each night when the bar closed the I.O.U.s from the cash register would be locked in the safe along with the rest of the day's receipts. The small file tray into which all I.O.U.s were placed was similarly locked in the safe when the bar was closed. Each morning, prior to opening the club, Mr. Chance would file the I.O.U.s issued the previous day into the file box containing all of the other I.O.U.s. The I.O.U.s were kept in alphabetical order, separated by index cards. This box was then replaced into the drawer behind the cash register.

Upon investigation, police officers at the scene of the crime discovered that the file box containing the I.O.U.s had been overturned in its drawer and its contents had apparently been rummaged through. The file box, the I.O.U.s and the index cards from the box were taken with several other movable items to the police laboratory to be checked for fingerprints. The check turned up several prints on the index separator cards; these cards were forwarded to the F.B.I. for possible identification. As a result of the F.B.I. report, appellant was arrested and subsequently tried.

At Fields' trial, Mr. Chance testified that he had seen Fields at the 515 Club prior to the date of the crime. Chance could not positively identify Fields as being one of the holdup men, but stated that by his height and build, Fields could have been the masked man who held the pistol. Chance further stated that besides himself, only the club's bartenders and janitors had access to the area behind the bar, where the drawer containing the I.O.U. file box was located. The state also called as a witness Robert Blaney, who was able to positively identify Fields as the masked man with the pistol; this identification was made on the basis of Fields' height, his build and his voice.

Mr. Mervin Smith, employed by the F.B.I. as a fingerprint examiner, testified he was able to conclude on the basis of more than ten points of identity that a fingerprint found on one of the alphabeti-

cal index cards from the I.O.U. file box was that of Fields. A substantial showing was made that Smith was in all respects qualified as an expert in fingerprint examination and comparison.

 The principal basis for appeal in this case is that the evidence adduced at the trial was insufficient to allow the conviction to stand. It is well settled that the determination of whether evidence is sufficient to support a jury verdict of guilt must be made from a view of the evidence most favorable to the state.[3] Viewed in this light, we think that the evidence against Fields was ample to support the jury's verdict of guilt on both counts. There can be little doubt here that the state has made a showing sufficient to meet the requirements established by this court.[4]

 Fields further contends that error was committed by allowing his conviction on counts of both larceny and robbery, because there was only a single victim involved and only a single criminal act committed.[5] In holding that this claim is without merit, we need not pass on the legal issues raised by appellant's contention; *it is enough to note that in this instance* the indictment clearly charged Fields with two separate crimes arising from two distinct criminal acts.[6] The conviction of robbery was based on the charge that Fields, by threatening with a pistol, took a wallet from the person of Truman Chance. The conviction of larceny was based on the allegation of theft of the money from the cash registers.

The convictions of Eugene Parker Fields of both larceny and robbery are affirmed.

NESBETT, C. J., not participating.

3. Gray v. State, 463 P.2d 897 (Alaska Jan. 16, 1970); Shafer v. State, 456 P.2d 466, 469 (Alaska 1969); Beck v. State, 408 P.2d 996, 997 (Alaska 1965).

4. *See,* Allen v. State, 420 P.2d 465 (Alaska 1966); Jennings v. State, 404 P.2d 652 (Alaska 1965); Bush v. State, 397 P. 2d 616 (Alaska 1964); Davis v. State, 369 P.2d 879 (Alaska 1962).

 It should perhaps be noted that, while there is apparently no Alaska case on the issue, cases of other jurisdictions hold that the presence of a fingerprint will alone be sufficient basis for a conviction where circumstances are such as to indicate that the fingerprint could have been left only at the time of the crime. *See, e. g.,* Silva v. People, Colo., 459 P.2d 285 (1969); Rhoden v. State, Fla.App., 227 So.2d 349 (1969); Lawless v. State, 3 Md.App. 652, 241 A.2d 155 (1968).

5. Appellant cites People v. Tenney, 162 Cal.App.2d 458, 328 P.2d 254, 257 (1958).

6. Count one of the indictment in this case provides in pertinent part:

 That * * * Eugene Parker Fields did wilfully, unlawfully and feloniously, by force and violence and by putting Truman William Chance in fear with a pistol, take from the person of said Truman William Chance property of value, to-wit: a wallet and United States currency in the amount of approximately $10.00 (ten dollars) * * *.

 Count two of the indictment provides in pertinent part:

 That * * * Eugene Parker Fields did wilfully, unlawfully, and feloniously take, steal and carry away, with the intent to permanently deprive the owner thereof, property of value, to-wit: United States currency in an amount in excess of one hundred dollars ($100.-00), said currency being the property of the 515 Club, Inc. * * *