Eugene FIELDS, Petitioner-Appellant,

v.

STATE OF ALASKA and William Huston, Superintendent of the Juneau Correctional Institution, Respondents-Appellees.

No. 74–1679.

United States Court of Appeals, Ninth Circuit.

Oct. 14, 1975.

William G. Ruddy (argued), Juneau, Alaska, for petitioner-appellant.

Thomas K. Williams, Asst. Atty. Gen. (argued), Fairbanks, Alaska, for respondents-appellees.

OPINION

Before DUNIWAY, TRASK and SNEED, Circuit Judges.

PER CURIAM:

This is an appeal from the denial by the district court of a writ of habeas corpus.[1]

On December 11, 1967, two masked men committed an armed robbery in a tavern in Anchorage, Alaska. They herded the owner and three customers into a rest room and barricaded them inside. After the robbers left, the four men broke out to discover the cash register rifled and $2,200 missing. Later the police discovered that an additional $40 was taken from a drawer located behind the bar across from one of the cash registers. The drawer also contained a small file box which held customers' IOU's. The file box had been ransacked.

---

1. The court could have declined to accept jurisdiction upon the ground that the petition must allege "the name of the person" who has custody over the petitioner. 28 U.S.C. § 2242. *Olson v. California Adult Authority*, 423 F.2d 1326 (9th Cir.), *cert. denied*, 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970); *Ashley v. State of Washington*, 394 F.2d 125 (9th Cir. 1968); *Morehead v. State of California*, 339 F.2d 170 (9th Cir. 1964); *Developments in the Law—Federal Habeas Corpus*, 83 Harv.L.Rev. 1038, 1166 (1970). Here the petition as filed named only the State of Alaska. In dicta we have indicated that this defect might be cured by amendment. *See Ashley v. State of Washington, supra.* It has been corrected here and by motion which we have granted and we consider the merits.

Several fingerprints were lifted from index separator cards used in the file box. The file box was kept at locations so that only bar employees had access to it. Petitioner was arrested as a result of fingerprint evidence.

At trial in the Alaska State Court a fingerprint expert testified that a print lifted from the index separator cards was petitioner's. The owner of the bar testified that Fields could have been the robber because of his height and build. He stated that he had seen Fields at the bar on an occasion prior to the robbery. One of the customers positively identified Fields based on height, build, and voice. *Fields v. State,* 465 P.2d 527 (Alaska 1970). The jury found petitioner guilty of robbery and larceny in violation of AS 11.15.240, 11.20.140. He was sentenced to a total of 20 years imprisonment.

On appeal the Alaska Supreme Court found that the evidence was sufficient to convict and rejected Fields' contention that he could not be convicted of both robbery and larceny for the same occurrence. *Fields v. State,* 465 P.2d 527 (Alaska 1970).

Fields filed this petition for habeas corpus in the District Court for the District of Alaska. He contended that the witnesses' identifications were insufficiently positive to support conviction, that the fingerprint evidence was not admissible, and that his due process rights were violated because the state did not disclose the results of fingerprint analysis of a number of other prints lifted from the index box separator cards and that other persons of similar height, build, and voice to the robber might have been identified, thus exculpating petitioner.

The district court found that a review of the briefs before the Alaska Supreme Court and its opinion revealed that Fields had not raised his claim there that due process rights were violated because the state did not disclose the results of the analysis of other fingerprints. The court concluded, however, that Fields

had exhausted his state remedies because, "No further state remedies are presently available to petitioner," and assumed for this motion that petitioner had not deliberately by-passed the non-disclosure issue.

The court further held that petitioner had failed to demonstrate insufficiency of the evidence. It also found no denial of due process rights since the presence of other fingerprints on the index separator cards was not exculpatory. Petitioner had no legitimate access to those cards and thus his fingerprint on one of them severely incriminated him. On appeal petitioner has pressed only his due process claim.

In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963), the Court discussed the due process violation inherent in the suppression of evidence favorable to the accused, and stated that:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

Again in *Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972), the Court referred to the "heart of the holding" as including a request by the accused.

"The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence. These are the standards by which the prosecution's conduct in Moore's case is to be measured."

This court has also considered the question in *United States v. Hibler,* 463 F.2d 455, 460 (9th Cir. 1972). There in

an "extremely close" case on the issue of guilt or innocence the government did not disclose evidence of a police detective which would have bolstered the defendant's credibility. The defense counsel did not specifically request the information and government counsel did not proffer it, thinking it was not material. In our opinion by a divided court we held that non-disclosure even without request may result in a violation of the due process rights of the accused.

"Thus Hibler is entitled to reversal if the government failed to disclose evidence which, in the context of this particular case, might have led the jury to entertain a reasonable doubt about his guilt. While in many cases it might be true that evidence of the type involved would not be crucial on the issue of a defendant's guilt or innocence, we have here a case, as we have shown, in which the evidence was extremely close."

Here there was a positive identification of the petitioner by an eyewitness albeit based upon height, build, and voice because the robbers wore masks. The exculpatory character of the evidence undisclosed is weak. Petitioner had no legitimate business behind the bar going through the IOU slips or their index cards. There was no showing that he had ever signed an IOU and thus was trying to remove it. There was no identification made of the identities of the other persons whose fingerprints were found. Other employees as well as the owner had access to the IOU file and their fingerprints might well have been among them. Such evidence would not have been exculpatory of the petitioner. The loss of the money was clearly attributable to the two who perpetrated the robbery and rifled the cash register and the IOU drawer. The fingerprints which were lifted and examined were taken immediately after this occasion. It was the identification of the fingerprints of either of those two upon the cards which was incriminatory.

Even the identification of the fingerprints of others in and around the bar, the cash register and the IOU drawer would not have been incriminatory to them when they had legitimate reasons to be there. The materiality of those prints would be questionable and there is little likelihood that they would have affected the judgment of the jury. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Durgin,* 444 F.2d 308 (9th Cir. 1971). We find no denial of due process in non-disclosure as asserted here, nor any error in the judgment of the district court.

Judgment affirmed.

DUNIWAY, Circuit Judge (dissenting):

I dissent. I would reverse and remand for further proceedings.

Under 28 U.S.C. § 2243, the trial judge was required to award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto. I cannot say that, in this case, it appears from Fields' application that he is not entitled to the writ. The trial judge, however, in a written opinion and order, permitted Fields' pro per petition for a writ of habeas corpus to be filed in forma pauperis and denied it. He did not issue an order to show cause and he did not hold a hearing. I think that in this case this was error.

The trial judge had before him only the petition, the opinion of the Supreme Court of Alaska, and the briefs filed in that court in Fields' appeal. He did not have the trial transcript or the evidence that Fields says that the prosecutor withheld. I do not think, on this record, it is possible to say with any assurance that Fields is not entitled to the writ.

The trial judge, and the majority opinion, rely in part on a "positive" identification of Fields by one witness. Both of them rely on a statement by the Alaska Supreme Court that the identification was "positive." Under 28 U.S.C. § 2254(d), "a determination after a hear-

ing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State . . . were parties, evidenced by a written opinion . . . , shall be presumed to be correct . . . ." I have serious doubt that the opinion of the Alaska Supreme Court is the kind of opinion that is referred to in § 2254, subsection (d). I think that Congress was talking about an opinion by the fact finder. That would be the Alaska trial judge or jury, not the Alaska Supreme Court. But assuming that I am wrong, I think that Fields has, in his petition, met the presumption. He has shown, prima facie, that the "factual determination is not fairly supported by the record." 28 U.S.C. § 2254(d)(8). He has made that showing by quoting the trial transcript, as § 2254(e) requires. He alleges that there were but two witnesses who saw the robbery. One of them, Chance, the bar owner, knew Fields, had seen him in the bar the day before the robbery, but could not identify Fields as one of the robbers, both of whom wore masks. The other, Blaney, a customer, who came in while the robbery was in progress, testified, as Fields quotes the record:

(Direct) Question: Were you able to recognize either of the two masked men as you saw them then at the time?

Answer: At that time I did not recognize them no. (tr. p. 48)

Question: And would you indicate which of the two masked men, you would identify as the defendant.

Answer: The defendant I would identify as the short one wearing the pea jacket.

Question: How would you describe the shorter one?

Answer: Well, actually he had the pistol, and I kept looking at the pistol, he was thin.

(Cross) Question: And I am asking you if he is in fact five-five, then, he is not the man that you are identifying as being the robber, is that correct?

Answer: I would say it would be very hard, to be the robber?

Question: Sir?

Answer: I would say it would be very hard for *him* to be the robber if he is five-five.

Fields then alleges:

This same witness testified that the shorter of the two robbers, he would judge to be five-nine, shorter than he was. The taller one he would judge to be in the neighborhood of six foot. However, he also said that they were stooped over slightly. If this was the case, this indicates that the robbers might be even taller if they were not stooped over, slightly. Petitioner's height was established at (tr. p. 72) as being five-five. At this height of five-five, if your petitioner was stooped over slightly, he would be in the neighborhood of five-feet tall. A very distinct difference from five-feet-nine.

If what Fields alleges is true, I cannot see how Blaney's identification can fairly be called "positive." To me, even his direct testimony is not positive. Moreover, an identification which, on direct, is "positive" can be seriously shaken on cross. It will still be an identification, and it may be that a jury will accept it, but it is no longer "positive." That is the situation here.

I stress the foregoing only to show that Fields' case was close, and that therefore the missing evidence regarding fingerprints is important—or may be important—to his defense. The question is whether the state "failed to disclose evidence which, in the context of this particular case, might have led the jury to entertain a reasonable doubt about his [Fields'] guilt." *United States v. Hibler,* 9 Cir., 1972, 463 F.2d 455, 460. To that question I would reply that, on this record, the answer is "prima facie, yes."

I base the answer on the state's failure to disclose the fifteen or so other

fingerprints, and the results of the examination of them by the F.B.I. This is not a case such as *United States v. Durgin,* 9 Cir., 1971, 444 F.2d 308, where the defendant was caught red-handed so that the presence of another's fingerprint on the contraband was of no help to him. Here, the presence of the fifteen or sixteen other fingerprints, unless they are identified as being those of persons who had authorized access to the I.O.U. file, could support an argument that (a) someone else may have been the robber and that (b) Fields, as a customer of the bar, may have had access to the file at another time and so is not shown by the partial print to have been the robber. The inference would be strong if it could be shown that one or more of the prints were *not* those persons having such access. Supporting this argument would be at least the following: (1) the robbers wore gloves; (2) neither Blaney nor Chance could positively identify Fields; and (3) others besides employees and Fields had access to the I.O.U. file. I find nothing in the record to support an assumption that there was no identification made of the identities of the other persons whose fingerprints were found. We cannot know whether that is true without the F.B.I. reports.

Because of the rather doubtful nature of the identification evidence, I have misgivings as to whether Alaska has convicted the right man. A twenty-year sentence, especially where the record raises such misgivings, is a very serious matter. The undisclosed evidence may either help to eliminate or to strengthen those misgivings. Neither the trial judge nor this court can tell which unless or until that evidence is made available.

I would remand with directions to issue an order to show cause as provided in § 2243. I would also require the court to obtain a copy of the trial transcript and to order that the state of Alaska provide the court with whatever information it obtained from the F.B.I. or elsewhere about the sixteen or so fingerprints that were found in the I.O.U. drawer behind the bar.