GEORGE LEONARD McCARGO ALIAS JAMES
McCLAIN *v.* STATE OF MARYLAND

[No. 121, September Term, 1967.]

*Decided April 15, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Roland Walker,* with whom was *Millard S. Rubenstein* on the brief, for appellant.

*William B. Whiteford, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *James A. Wise, State's Attorney for Caroline County,* on the brief, for appellee.

PER CURIAM.

This is an appeal from a general verdict of guilty by the court in the Circuit Court for Caroline County under an indictment charging storehouse breaking with intent to commit a felony (1st count) and grand larceny (2nd count) and consecutive sentences of imprisonment for a term of 5 years on the first count and 10 years on the second count.

The record indicates that the appellant was arrested on July 27, 1965 on a charge of larceny of a pistol. While awaiting trial he escaped from the county jail on August 30, 1965, was apprehended about 36 hours later, was tried and convicted for the escape in October 1965 and sentenced to imprisonment for a term of 18 months. The charge of larceny of a pistol was dismissed. On November 1, 1965, during his incarceration on the escape conviction, he was indicted for the offenses which are the subject of this appeal. He was brought before the Circuit Court for Caroline County on November 8, 1965, informed of the nature of the charges against him, of the maximum sentence which could be imposed upon conviction and of his right to counsel. On the same day counsel was appointed to represent him. He served about 13 months on the escape sentence but was still confined on a detainer. He was admitted to bail on the offenses of storehouse breaking and grand larceny then pending on October 13, 1966 and tried and convicted on those offenses on January 30, 1967.

He presents three questions on appeal:
  I. Was he denied a speedy trial?

II. Was he afforded effective assistance of counsel?

III. Was the evidence sufficient to sustain the convictions?

I

On November 7, 1966 the appearance of counsel appointed to represent the appellant was stricken. He retained private counsel whose appearance was entered on that date. On January 11, 1967 a motion to dismiss the indictment was filed on the ground that a speedy trial had been denied him. The motion was heard on January 24 and 25, 1967 and denied. At the hearing on the motion to dismiss the appellant testified that he had importuned his court appointed counsel to seek a trial. Counsel testified that, in his opinion, trial while the appellant was incarcerated on the escape conviction would be detrimental and that he would not press for trial until he thought it would be to the appellant's advantage for trial to be had. It "was purely a matter of legal tactics" and counsel's "own best judgment or decision," in the appellant's best interest. When the appellant was released from the sentence for escape, counsel was in the hospital, which fact was known to the appellant. When the appellant was released on bond, counsel had no further communication from him. The appellant claimed he was prejudiced because his wife died on July 4, 1966 and she would have testified that he was away from home from 2 July to 7 July and had telephoned her from Baltimore. The lower court found no actual prejudice. "Obviously all his wife could have testified to under any circumstances was that he was not home from the 2nd to the 7th of July (the crime was alleged to have been committed on 6 July), and where he was she had no personal knowledge except he called her on the telephone and said he was talking from Baltimore City * * * She could not have possibly said whether he was in Caroline County on the 6th of July or whether he wasn't. She wasn't with him and didn't know where he was. We don't believe she could have been used to any effect as an alibi witness." The lower court further found that no proper demand had been made for trial until January 11, 1967 when the motion to dismiss the indictment was filed and that the delay occasioned after retained counsel entered his appearance on November 7, 1966 was due "to pleadings filed by the accused

through his counsel." [1] The lower court found that the right to a speedy trial had not been denied. We agree and find no error in the denial of the motion to dismiss the indictments. In *Fabian v. State,* 3 Md. App. 270, we noted that a defendant may waive the right to a speedy trial by failing to demand it, or, having demanded it, he may waive it by his conduct thereafter. We held that when an accused does not make a demand for a speedy trial, he must show that he has suffered actual prejudice caused by the undue delaying tactics of the State. Absent such a showing, the right to a speedy trial has not been denied him. The appellant had waived any right he may have had to a speedy trial until January 11, 1967 and showed no actual prejudice by the delay. He went on trial 19 days after his demand. This delay of 19 days was in no wise arbitrary, capricious, oppressive or unreasonable and did not reach constitutional proportions.

## II

The question whether the appellant was afforded effective assistance of counsel is directed toward his court appointed counsel. The basis of the contention that he was not afforded effective assistance is that such counsel did not press for a speedy trial. Under the circumstances shown by the record before us we cannot conclude that the court appointed counsel was inadequate by reason of his tactics in not pressing for trial. He was an attorney with extensive experience and in his considered opinion, a trial while the appellant was incarcerated for another offense would have been against the best interest of his client. In considering the matter we are not unmindful of our holding that the appellant showed no prejudice as a result of the delay. See *Charles v. State,* 1 Md. App. 222.

## III

The *corpus delicti* of both the storehouse breaking and grand larceny was proved. An owner of the appliance and furniture store in Federalsburg, Md., designated in the indictment, testified that he was the last to leave the above store about 8:00

---

1. A Bill of Particulars was filed on November 22, 1966 and answered by the State on January 9, 1967. An earlier answer was not designated or requested.

P.M. on July 6, 1965. He "locked it up" and the inventory at that time was intact. When he opened the store about 8:00 A.M. the next morning he found that four portable television sets, two wrist watches, five radios, two portable phonographs and petty cash of $2.57 had been taken. The total value of the missing articles was in excess of $700. He observed that one of the double doors at the rear of the store had been "removed completely" and a glass pane broken. The screws had been pried loose from the door molding and the hinges removed. He called the police. A corporal of the Maryland State Police arrived on the scene about 8:30 A.M. He testified that the point of entry was the rear door, giving access to the entire store. The door had been forced with "sort of a pry type instrument." The front of the building contained a booth that was "partitioned off" and used as an office. "It has a rail and above the rail there's a partition of glass possibly eighteen inches high. Immediately adjacent to this office was a display case, a metal and glass display case, and in this case were numerous watches, electric shavers and small clocks. This case had a plastic strip across the top which was used more or less as an advertisement. The plastic strip had been ripped loose from the top of the case and it was apparent that several articles had been taken from the case by the vacancies created in the display shelf. Also situated to the south side of this office section was a large display case which was also made of metal and glass. The front of it was composed of two sliding glass doors, one overlapping the other. This display case was used for radios, small portable transistors, record players and items of that nature * * * The door to the case was open and it was obvious by several vacancies within this cabinet that something had been removed from the display shelf inside of the cabinet." The officer processed the cabinets and the rear door of the building for latent fingerprints and "removed twenty-three lifts." Three lifts were from the rear door, on its side near the door knob. Others were from the glass doors to the "radio cabinet" and from the "glass clock cabinet." Another officer, qualified as an expert in fingerprint identification, testified that he determined that three of the latent prints, one found on "the glass clock cabinet, inside panel" and two found on "the glass doors to radio cabinet, inside left" were fingerprints of the ap-

pellant. The cards containing the latent prints were admitted in evidence. The appellant testified that he went to Baltimore on July 2, 1965, visiting his sister and parents. He did not return to his home in Hurlock, Md. until the night of July 7, 1965. Neither his sister nor his parents testified. While in Baltimore he purchased an automobile on July 7th at a total price of $305, giving the dealer first $10 and returning later that day and giving him the balance of the down payment in the amount of $85. He also paid an uninsured motorist fee. He said he had the money all the time. On cross-examination he was asked directly to explain how his fingerprints were left in the store and could offer no explanation. He had been convicted previously of burglary and larceny, which evidence could be properly considered by the trial court with respect to the appellant's credibility.

In *Lawless v. State,* 3 Md. App. 652, we noted the rule stated in *McNeil v. State,* 227 Md. 298, 300, that "fingerprint evidence must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime". After reviewing cases in this State and in other jurisdictions we concluded that such other circumstances need not be those "completely independent of the fingerprint, and may properly include circumstances such as the location of the print, the character of the place or premises where it was found and the accessibility of the general public to the object on which the print was impressed." We said:

> "A latent fingerprint found at the scene of the crime, shown to be that of an accused, tends to show that he was at the scene of the crime. The attendant circumstances with respect to the print may show that he was at the scene of the crime at the time it was committed. If they do so show, it is a rational inference, consistent with the rule of law both as to fingerprints and circumstantial evidence, that the accused was the criminal agent."

The function of this Court in a non-jury case is not to determine whether it would have come to a different conclusion

652

but rather whether the evidence was legally sufficient to warrant a finding of the trial judge that the defendant was guilty beyond a reasonable doubt, *Bury v. State,* 2 Md. App. 674, giving due regard to the opportunity of the lower court to judge the credibility of witnesses, *Brooks v. State,* 2 Md. App. 291. In the instant case the fingerprints of the appellant were impressed on two cabinets on the premises. From this evidence the trial court could properly find that the appellant had been at the scene of the crime. The circumstances that the building was entered by a breaking of a rear door, giving access to that part of the building from which the articles were stolen, that the breaking and the larceny occurred within the same period of time, that the appellant's prints were located on the inside of glass panels in the cabinets, that articles were stolen from those cabinets and that the appellant could not explain how his prints got on the cabinets tended reasonably to exclude the hypothesis that the prints were impressed at a time other than that of the crime. We think that the evidence and rational inferences therefrom were sufficient for the trial judge to find that the appellant's prints were impressed at the time of the commission of the crime and that he was, therefore, the criminal agent. Thus the judgments of the trial court on the evidence were not clearly erroneous and we may not set them aside. Md. Rules, 1086.

*Judgments affirmed; appellant to pay costs.*