CORNELL FALCON *v.* STATE OF MARYLAND

[No. 231, September Term, 1967.]

468

*Decided July 1, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*William H. Nelson, Jr.,* and *Thomas E. Hicks* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Barry S. Frame, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The Appellant was convicted of second degree murder by a jury in the Criminal Court of Baltimore and sentenced to a term of twelve years.

In this appeal, he first contends that he was denied his constitutional right to a speedy trial.

The record indicates that at approximately 11:00 P.M. on August 18, 1966, a police officer found the deceased lying in the middle of the street bleeding from multiple stab wounds

about the face and head. He was taken to a hospital where he died, as a result of the wounds, on November 25, 1966.

The Appellant was arrested on August 19, 1966, and incarcerated on a charge of assault with intent to murder. He remained in jail on this charge until November 25, 1966, at which time the charge was changed to murder. He continued in jail, without bail, from that date until trial. Counsel was retained by the Appellant on January 9, 1967. A petition for a Writ of Habeas Corpus was filed; a hearing thereon was held January 23, 1967; and it was ordered that unless the Appellant were indicted by January 24, 1967, the Writ would be granted. An indictment was returned within the time specified; the case was scheduled for trial on February 28, 1967, but postponed at the request of the State because of the unavailability of certain witnesses. It was re-scheduled for March 28, 1967, but not reached for trial until March 29, 1967.

The period of time from the murder indictment, upon which he was convicted in this case, and his trial thereon, amounted to approximately three months. During this time, the Appellant made no demand for a speedy trial and he has not alleged or shown that he suffered any actual prejudice by the failure of the State to bring the case to trial at an earlier date during this period. Absent such a showing, he has not been denied his right to a speedy trial. *Fabian v. State*, 3 Md. App. 270, 286.

He argues, however, that the period from August 18, 1966, the date of his arrest, to the date he was charged with murder should be considered in determining whether he was denied his right to a speedy trial. The State accounts for the delay in bringing the Appellant to trial during this period by asserting that the victim was too ill to testify and that without his testimony the State could not proceed to trial. While we are at a loss to understand why bail procedures were apparently not available to the Appellant, the fact remains that the charge pending against him during this period was assault with intent to murder and this charge was dismissed on November 25, 1966, or shortly thereafter. During that period, no prosecution for murder, the crime of which he now stands convicted, had been, or could have been placed against him.

The Court of Appeals of Maryland, and this Court, have held, with exceptions not here pertinent, that the right to a speedy trial does not arise until a prosecution has been instituted and an accused cannot successfully complain of delay in the institution of the prosecution if it is within the applicable period of limitations. *Miller v. State*, 239 Md. 136, 139; *Price v. State*, 235 Md. 295, 299; *Osborne v. State*, 3 Md. App. 161, 163; *Brown v. State*, 1 Md. App. 571, 575. Thus, the Appellant's argument that the period from his arrest to the date of his prosecution for murder should be considered in determining whether he was denied his right to a speedy trial on the murder charge must fail in the face of this well established principle. As this Court said in *Osborne v. State, supra*:

> "While it is true that both the Sixth Amendment to the Federal Constitution and Article 21 of the Maryland Declaration of Rights give an accused the right to a speedy trial, these constitutional mandates have never been extended to encompass an alleged right to a so-called speedy indictment * * *."

The Appellant also contends that he "was denied a preliminary hearing as required under *Mallory v. United States*, 354 U. S. 449." *Mallory*, on its facts and holding, applies only to federal cases and not to state proceedings. *Bean v. State*, 234 Md. 432, 444. In *Fabian v. State, supra*, we held that "an accused has no 'absolute right' to a preliminary hearing whether he be indicted or charged under a criminal information."

Finally, the Appellant urges that the evidence demonstrated that he acted in self defense and, therefore, the jury's verdict was in error. It was stipulated by the State and the defense that the deceased was forty-four years of age, five feet two inches tall and at the time of his death weighed ninety pounds. The Medical Examiner testified that the autopsy revealed evidence of a stab wound in the back of the head approximately two inches above the collar line and that the resulting injury to that part of the brain controlling the respiratory system was the cause of death. Another witness for the State testified that on the evening in question he observed the Appellant and the deceased, who was known as "Pee Wee", in a bar; that they

got to "playing around" and later went outside where he observed an argument over cigarettes take place; that he saw the deceased pull "a hooked bill knife out like that and swing", and "pretty soon I see Pee Wee backtracking down the street" toward an intersection and when he got to the intersection he saw "Pee Wee laying in the street * * * but before he was laying in the street, I did see Cornell trip him. But, Cornell did say 'I'm cut.'" Another witness testified that he saw two men fighting in the street; "One man laying down, other man on top of him striking him * * *" and when asked if the man on top was taller than the man on the bottom answered "Yes", but he could not identify him. The Appellant, who was approximately six feet two inches tall, testified that when he asked the victim for a cigarette the victim cursed him and pulled a knife. "I tried to get away. He swung at me first. That's the time I threw my hand up, cut me through the finger. I had a screwdriver in my pocket. I swing back at him. I must have stabbed him. He backed back. Somebody in the crowd say 'Look out, he got a gun.' I don't know what he was going to do. He backed up, stumbled. He swung at me. I swung at him. Got to 21st street. He fell. I took off and run." When found by the police officer lying in the street the victim had in his possession a knife but no gun.

In *Tipton v. State*, 1 Md. App. 556, this Court recognized the doctrine of self defense as defined by Judge Hammond (presently Chief Judge) in *Guerriero v. State*, 213 Md. 545, 549:

> "The law of Maryland as to self-defense is clear. To justify an assault on the basis of self-defense, the accused must have had reasonable grounds to believe, and have in fact believed, himself in apparent imminent or immediate danger of death or serious bodily harm from his assailant or potential assailant. This belief must coincide with that which would have been entertained under the same circumstances by a person of average prudence. [Citations omitted] * * * This is in accord with the rule of the majority of the States, that is, for the accused successfully to invoke self-de-

fense, he must have done what he did to repulse an apparent danger of death or great bodily harm. A number of cases so holding are collected in an annotation in 114 A.L.R. 634. In Maryland it is for the trier of the facts to determine whether the accused was justified in meeting force with force. If justification be found to have existed, the force used must not have been 'unreasonable and excessive', that is, must not have been more force 'than the exigency reasonably demanded.' "

It is apparent from the testimony that at the beginning of the argument the victim did pull a knife and swing at the Appellant. The jury, however, could well have found from the evidence that the Appellant almost immediately thereafter became the aggressor and that it was the victim, not the Appellant, who was on the defensive. There was testimony that the victim was backing down the street and that he was tripped by the Appellant. It could reasonably have been inferred that the Appellant, who was about a foot taller than the victim, was the man seen on top of the victim striking him while he was lying in the street. The cause of death was a stab wound in the back of the victim's head. Finally, the Appellant himself admitted that the victim backed up, stumbled and fell.

Under the doctrine of self defense, it is for the trier of facts to determine whether more force was exerted by the accused than the exigency of the situation demanded. We are of the opinion that there was ample evidence from which the jury could determine that the Appellant became the aggressor and resorted to force which was grossly excessive under all the circumstances. We find no error in the lower court's refusal to grant the Appellant's Motion for Judgment of Acquittal.

*Judgment affirmed.*