## STATE OF MARYLAND *v.* RICHARD WILLIAM LAWLESS

[No. 18, September Term, 1971.]

*Decided October 21, 1971.*

The cause was argued before THOMPSON, MOYLAN and GILBERT, JJ.

\* Note: *Certiorari* denied, Court of Appeals of Maryland, January 10, 1972.

*Josef Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County, Devereaux F. Thomas* and *Eugene Muskus, Assistant State's Attorneys for Prince George's County,* on the brief, for appellant.

*Graydon S. McKee* for appellee.

MOYLAN, J., delivered the opinion of the Court.

The propensity of the appellee, Richard William Lawless, to transgress the criminal law with essential contemporaneity on both sides of the Prince George's County-Montgomery County line has once again thrown sand into the overtaxed machinery of court, prosecutor's office, clerk's office, sheriff's office and Department of Correction. For the second time within the decade vis-a-vis this appellee, that machinery has malfunctioned.

In *Lawless v. State,* 3 Md. App. 652, we dealt with his contention that he had there been denied his constitutional right to a speedy trial before his conviction in Montgomery County. There had been an eleven-month delay between indictment on April 6, 1966, and his receipt of that indictment or even informal notice thereof on March 1, 1967. The apparent reason for the delay was that he had been, during the interim, "incarcerated either in Prince George's County or in the House of Correction." We there dismissed his speedy trial contention because he had not shown that he had "suffered actual prejudice caused by the undue delaying tactics of the State." *Lawless v. State, supra,* 660-661. In the situation at bar, the appellee finds himself in similar straits, but for the fact that the trial priorities between the two counties have now been reversed and the eleven-month period between indictment and notice of indictment has now lengthened to eighteen months.

On December 19, 1968, the appellee was arrested in Montgomery County for a series of burglaries, house-

breakings and larcenies. The Montgomery County author-
ities notified police officials in Prince George's County.
On February 5, 1969, two detectives from Prince George's
County interviewed the appellee at the Montgomery
County Detention Center. As a result of information
there gathered, the appellee was indicted by the Grand
Jury for Prince George's County on April 2, 1969, on
charges of housebreaking.

During this, his latest odyssey through the perils of
law enforcement, the appellee journeyed from the Mont-
gomery County Detention Center to the Clifton T. Perk-
ins State Hospital to the Patuxent Institution. The pro-
cess of Prince George's County was, at best, apparently
never closer than one full step behind him. On April 7,
1969, five days after the appellee's Prince George's County
indictment, a Writ of Habeas Corpus Ad Testificandum
was sent to the sheriff of Montgomery County for ser-
vice upon the appellee in order to bring him before the
Prince George's County Circuit Court for arraignment.
For whatever reason, the appellee was not produced. On
September 29, 1970, a Writ of Habeas Corpus Ad Tes-
tificandum was sent to the Commissioner of the Depart-
ment of Correction for service upon the appellee. The
record is silent as to its return. On October 1, 1970, a
Writ of Habeas Corpus Ad Prosequendum was sent to
the Patuxent Institution for service upon the appellee.
On October 8, 1970, the appellee was produced and ar-
raigned in Prince George's County.

Following the arraignment on October 8, defense coun-
sel was appointed for the appellee on October 22. On Oc-
tober 29, a Motion for Discovery and Inspection was
filed on the appellee's behalf. On November 5, it was
noted in the records of the court that the State's Attor-
ney's Office had granted full informal discovery to coun-
sel for the appellee. On December 31 a Motion to Suppress
Evidence was filed. Also, on December 31, the appellee
filed a Motion to Dismiss the Indictment against him be-
cause of the failure of the State to grant him a speedy
trial. After a hearing before Judge William H. McCul-

lough on January 21, 1971, the Motion to Dismiss was granted. The State appeals.

Between the arraignment on October 8, 1970, and the granting of the Motion to Dismiss on January 21, 1971, there is no question but that the appellee's case was processed with commendable expedition. The only time period that concerned the court below and that concerns us now is the eighteen-month period between indictment on April 2, 1969, and arraignment on October 8, 1970.

## THE "DUE PROCESS" CLAIM

At the hearing below and before us, the appellee advanced two allegedly distinct constitutional claims. He contended firstly that, completely aside from any "speedy trial" claim under the Sixth Amendment, he was denied "due process of law" generally under the Fourteenth Amendment, in that the lack of timely notice of the charges against him frustrated his efforts to prepare a proper defense to those charges. It is difficult to grasp the fine distinction he attempts to draw between this and his more specific Sixth Amendment claim. To the extent to which the failure to give timely notice of charges creates some conceivable "due process" right beyond that involved in the question of a "speedy trial", we feel as we did in *Stevenson v. State*, 4 Md. App. 1, 17-18:

> "The appellants were apprised of the crimes charged by the indictments ultimately delivered to them and, in view of our holding that their defense was not prejudiced by the delay in trial and as they have not yet been tried (since 30 August 1967 by their specific request), they have received the indictments in due time to plead and to prepare for their defense. Although it may be that the appellants were not furnished copies of the indictments 'as soon as practicable' after they were prepared, Rule 719 a provides no sanction for violation of this requirement and prosecution is not precluded

thereby in the absence of a constitutional violation. See *Schuette v. State,* 228 Md. 340; *Ballam v. Warden,* 196 Md. 644. We cannot justify the failure of the State to furnish the appellants copies of the indictments promptly, but, under the circumstances of this case, we find no denial of their constitutional rights." [1]

If there be any general "due process" claim the appellee is asserting which is not subsumed within the "prejudice" aspect of the "speedy trial" consideration, it would appear to be directed at the ultimate integrity of the trial itself. That being the case, the claim is premature. It should await appellate review of an actual conviction, so that we could then consider whether the appellee had, indeed, been denied "liberty or property without due process of law." [2] Suffice it to say that the hearing judge appeared clearly to base his decision exclusively on the specific Sixth Amendment right.

## THE "SPEEDY TRIAL" CLAIM

We turn, therefore, to a consideration of the appellee's second contention — that he was denied a "speedy trial" under the specifics of the Sixth Amendment [3] as applied to the states via the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U. S. 213.

---

1. See also *Wilson, Valentine and Nutter v. State,* 8 Md. App. 653, 669-671, for an instance where an allegedly unreasonable delay in notifying the defendant of the charges against him gave rise to a constitutional claim under the "due process" clause. The delay was there held not to have been unreasonable.

2. The "due process" clause would be the appropriate constitutional peg on which to hang a claim of undue delay in the institution of a prosecution, either pre-indictment or pre-arrest. See *Montgomery v. State,* 4 Md. App. 473, 480; *Greathouse v. State,* 5 Md. App. 675, 687; *Barnett v. State,* 8 Md. App. 35, 39, and *Smith v. State,* 11 Md. App. 631, 633-634. This is not the nature of the claim in the present case, however.

3. The appellee also urges that he has been denied his right to a speedy trial as guaranteed by Article 21 of the Maryland Declaration of Rights. Since the "speedy trial" right under the Maryland Constitution is coterminous with its Federal counterpart, our resolution of the claim under the Sixth Amendment will be dispositive of the parallel claim under Article 21.

Aside from making it clear that the Sixth Amendment right to a "speedy trial" is binding upon the states, the Supreme Court has given little guidance as to the specific content of the right and little direction as to precisely how the guarantee is to be implemented. As was noted by Mr. Justice Brennan, in his concurring opinion in *Dickey v. Florida,* 398 U. S. 30, at 40:

> "It is timely to note that the Court has as yet given scant attention to these and other questions essential to the definition of the speedy-trial guarantee. Before *Klopfer,* only three of our opinions dealt at any length with the right, and each was decided with little analysis of its scope and content. See *Beavers v. Haubert,* 198 U. S. 77, . . . (1905); *Pollard v. United States,* 352 U. S. 354, . . . (1957); *United States v. Ewell,* 383 U. S. 116, . . . (1966). *Klopfer* itself attempted no extensive analysis; nor did our later decision, *Smith v. Hooey,* 393 U. S. 374, . . . (1969). And today we do not consider the effect of the application of the Speedy Trial Clause to the States. Thus, although we said in *Klopfer* that the right to a speedy trial is 'one of the most basic rights preserved by our Constitution,' . . . a guarantee 'as fundamental as any of the rights secured by the Sixth Amendment,' . . . we have yet even to trace its contours."

The Court of Appeals has had occasion to deal with the "speedy trial" question in 25 reported opinions. During the existence of this Court thus far, we have had to deal with the same question in a grand total of 58 reported opinions.[4] From this massive corpus of case law,

---

4. On only one of the 25 occasions when the claim was before them, did the Court of Appeals hold that the right to a speedy trial had been unconstitutionally denied. See *Jones v. State,* 241 Md. 599. On only 2 of the 58 occasions when the claim has been before us, have we held that the right to a speedy trial was unconstitutionally denied. See *Wilson v. State,* 8 Md. App. 299, and *Caesar v. State,* 10 Md. App. 40.

certain fundamental principles have been thoroughly distilled. Pre-eminent is that the right to a speedy trial is a relative one and the time within which trial must be had to satisfy the constitutional guarantee depends on the facts and circumstances of the particular case.[5] In evaluating those facts and circumstances on a case-by-case basis, four factors [6] come into play:

(1) The length of the delay,
(2) The reason for the delay,
(3) Prejudice to the accused, and
(4) Waiver by the accused.

## WAIVER

Waiver will, in and of itself, dispose of a contention that an accused has been denied a speedy trial, no matter what the other factors may involve.[7] Waiver is a self-

---

5. *Beavers v. Haubert*, 198 U. S. 77, 87; *Pollard v. United States*, 352 U. S. 354, 361; *United States v. Ewell*, 383 U. S. 116, 120; *Jones v. State*, 241 Md. 599; *Stevenson v. State*, 4 Md. App. 1, 10-11.

6. This "four-factor" articulation of what goes into the decisional process first came into our case law in *Hall v. State*, 3 Md. App. 680, 685-686. It was taken from an excellent discussion, Note, "The Lagging Right to a Speedy Trial," in 51 Va.L.Rev. 1587 (1965). As a statement of what enters into our analysis, on a case-by-case basis, it has been consistently rearticulated. See *West v. State*, 3 Md. App. 662, 665; *Stevenson v. State*, 4 Md. App. 1, 11; *Montgomery v. State*, 4 Md. App. 473, 481; *Bryant v. State*, 4 Md. App. 572, 575; *Johnson v. State*, 4 Md. App. 648, 655; *Frazier v. State*, 5 Md. App. 88, 92; *Graham v. State*, 6 Md. App. 458, 461; *Barnett v. State*, 8 Md. App. 35, 39; *Wilson v. State*, 8 Md. App. 299, 306; and *Caesar v. State*, 10 Md. App. 40, 42. The Supreme Court first discussed the "four-factor" analysis in *Dickey v. Florida*, 398 U. S. 30, at 48, n. 12 (concurring opinion by Brennan, J.), referring to the aforementioned Note in 51 Va.L.Rev. 1587.

7. In *Fabian v. State*, 3 Md. App. 270, 286, Judge Orth, speaking for the Court, did note one ameliorating qualification to the otherwise absolutely foreclosing effect of waiver upon a claim of "speedy trial" denial. If the waiver consisted simply of the failure to demand a speedy trial, the accused will not thereby have consideration of his constitutional claim shut off if he can show (1) actual prejudice which he has suffered and (2) that that prejudice was caused by the undue delaying tactics of the State. That reprieve from the foreclosing effect of waiver does not necessarily settle the issue in his favor, however. The actual prejudice which he has shown must still be evaluated in relation to (1) the length of the delay and (2) the reason for the delay (or degree of "fault" on the part of the State) in arriving at the ultimate constitutional determination. See also *McCargo v. State*, 3 Md. App. 646, 649;

contained phenomenon.[8] In the case at bar, however, no

*Lawless v. State,* 3 Md. App. 652, 661; *Falcon v. State,* 4 Md. App. 467, 469; *King v. State,* 6 Md. App. 413, 418; *Wilson v. State,* 8 Md. App. 653, 670; *Barnett v. State,* 8 Md. App. 35, 40; *Hall v. State,* 3 Md. App. 680, 692.

8. Waiver, in a "speedy trial" context, is protean in its manifestations.

It may consist of the failure on the part of the accused to demand a speedy trial at any time. See the excellent discussion of waiver of this type in *Harris v. State,* 194 Md. 288, 297-299, and the classic waiver case, cited at length in *Harris,* of *State v. Mc-Tague,* 173 Minn. 153, 216 N. W. 787. For cases where the failure to demand a speedy trial was held to operate as a waiver of the right to a speedy trial, see *Harris v. State, supra; Thompson v. Warden,* 198 Md. 668, 669; *Tutt v. Warden,* 199 Md. 691, 693; *Dyer v. Warden,* 214 Md. 626, 628; *Price v. State,* 235 Md. 295, 298; *Keyes v. State,* 236 Md. 74, 80; *Bonner v. Director,* 237 Md. 445, 447; *Manning v. State,* 2 Md. App. 177, 181; *Hubbard v. State,* 2 Md. App. 364, 371; *Fabian v. State,* 3 Md. App. 270, 285; *Lawless v. State,* 3 Md. App. 652, 661; *Hartley v. State,* 4 Md. App. 450, 462; *Falcon v. State,* 4 Md. App. 467, 469; *Presley v. State,* 6 Md. App. 419, 429; *White v. State,* 8 Md. App. 51, 53; *State v. Cavey,* 11 Md. App. 274, 277-279.

It may consist of a demand made so late in the time period under consideration that it operates as a partial waiver (that is, as a waiver of any claim with respect to the pre-demand period). For cases involving this form of waiver, see *Swift v. State,* 224 Md. 300, 305; *Scott v. State,* 2 Md. App. 705, 707; *Kelly v. State,* 2 Md. App. 730, 735-736; *Tillery v. State,* 3 Md. App. 142, 146; *McCargo v. State,* 3 Md. App. 646, 648-649; *Hall v. State,* 3 Md. App. 680, 687; *Thompson v. State,* 4 Md. App. 31, 34; *Wilkins v. State,* 4 Md. App. 334, 339-340; *State v. Oglesby,* 8 Md. App. 415, 416.

It may consist of a timely demand followed by a failure to reassert or to re-press the demand. See the excellent discussions of this type of waiver in *State v. Murdock,* 235 Md. 116, 121-123; *State v. Long and Nelson,* 1 Md. App. 326, 333-339, and the classic analysis, cited in both of those cases, in *State v. McTague, supra,* of how an accused, even after demanding a trial, may not "thereafter sleep on his rights." See also *United States v. Patrisso,* 21 F.R.D. 363 (S.D.N.Y., 1958), cited at length in *State v. Murdock, supra.*

It may consist, either after a demand has been made or in the complete absence of any demand, of conduct which indicates that the accused is not, indeed, ready for trial or which itself causes further delay (analytically, this should be considered not waiver but rather as "non-delay" time, not attributable to the State and not entering into the computation of "length of delay"). For cases dealing with such conduct on the part of an accused and sometimes discussing such conduct in terms of "waiver," see *Allen v. State,* 1 Md. App. 249, 252; *Manning v. State,* 2 Md. App. 177, 181; *Brown v. State,* 2 Md. App. 388, 395-396; *Dubs v. State,* 2 Md. App. 524, 530-531; *Hall v. State,* 3 Md. App. 680, 686-691; *Thompson v. State,* 4 Md. App. 31, 33-34; *Wilkins v. State,* 4 Md. App. 334, 339-340; *Hartley v. State,* 4 Md. App. 450, 462; *Frazier v. State,* 5 Md. App. 88, 90-93, and *State v. Oglesby,* 8 Md. App. 415, 418.

It may also, of course, consist of an express waiver of the right to a speedy trial.

We have not considered in this footnote 1) the failure of the ac-

evidence was adduced that the appellee had ever been informed of the charges pending against him and was ever, therefore, in a position to make any demand or request for a prompt disposition of those charges. Waiver is, as a result, no factor in this case.

## THE DELAY-REASON-PREJUDICE COMPLEX

"The other three factors are relative and must be considered together in arriving at a decision in each case." *Hall v. State,* 3 Md. App. 680, 686. In this three-factored analysis, the "delay" factor is the initial and primary object of examination. The "reason" factor and the "prejudice" factor are, respectively, its cause and effect. They represent the possible "fault" that led to the delay and the possible "harm" that flowed from the delay.

## THE THRESHOLD QUESTION OF "CONSTITUTIONAL DIMENSION"

Before proceeding to an analysis of possible causation and possible consequence, however, we need know first whether there was, indeed, any delay and, if so, whether it was a delay of constitutional proportions.

In reckoning delay, it is well settled that for "speedy trial" purposes, we look only at the time from the commencement of the prosecution (by way of warrant, information or indictment) to the time of trial. Although a general "due process" right may be involved, there is no "speedy trial" right guarding against undue delay in the pre-indictment or pre-arrest phase of a criminal proceed-

cused to present his claim prior to or at the trial or 2) a voluntary plea of guilty, since these represent a procedural waiver of the claim of "speedy trial" denial rather than a substantive waiver of the right to a "speedy trial" itself.

For a general discussion of waiver, see *Dickey v. Florida,* 398 U. S. 30, 48-51 (concurring opinion by Brennan, J.) ; Note, "The Lagging Right to a Speedy Trial," 51 Va.L.Rev. 1587, 1601-1610 (1965) ; Note, "The Right to a Speedy Trial," 20 Stanford L.Rev. 476, 478-480 (1968) ; Note, "The Right to a Speedy Trial," 57 Col.L.Rev. 846, 852-855 (1957).

ing.[9] Nor is there any "speedy trial" right guarding against undue delay in the entertainment and disposition of a Motion for a New Trial,[10] or of an appeal,[11] or of a defective delinquency determination.[12] It is also well settled that in computing "delay," we are concerned only with that passage of time fairly attributable to the State and not with the passage of time which is attributable to the tactics or other actions of the accused.[13]

In looking then at the period of time taken by the State to bring a "case" to trial, our threshold question is whether that period is of "constitutional dimension" — that is, Has there been, in fact, any true "delay" in the constitutional sense? Recognizing that the right to a "speedy trial" is not the right to an immediate trial,[14] but that time must be allowed for reasonable preparation on the part of the prosecution and for the orderly process of the case from indictment to retention (or appointment) of counsel to arraignment to trial,[15] we reckon as "delay" only the passage of time beyond that which is the obvious requirement of orderly procedure. If, upon preliminary examination, we may determine that there has been no "delay" of "constitutional dimension"

9. *Reddick v. State,* 219 Md. 95, 100; *O'Connor v. State,* 234 Md. 459, 462; *Price v. State,* 235 Md. 295, 298-300; *Keyes v. State,* 236 Md. 74, 80; *Miller v. State,* 239 Md. 136, 139; *Brown v. State,* 1 Md. App. 571, 574; *Osborne v. State,* 3 Md. App. 161, 163; *Hannah v. State,* 3 Md. App. 325; *Falcon v. State,* 4 Md. App. 467, 469-470; *Montgomery v. State,* 4 Md. App. 473, 478-480; *King v. State,* 5 Md. App. 652, 666; *Greathouse v. State,* 5 Md. App. 675, 687; *King v. State,* 6 Md. App. 413, 416-417; *Barnett v. State,* 8 Md. App. 35, 39; *Smith v. State,* 11 Md. App. 631, 634. See *Dickey v. Florida,* 398 U. S. 30, 43-47, (concurring opinion by Brennan, J.).

10. *Ash v. State,* 238 Md. 317, 320; *Brown v. State,* 2 Md. App. 388, 395; *Davis v. State,* 4 Md. App. 492, 498.

11. *Howard v. State,* 3 Md. App. 173.

12. *McCloskey v. Director,* 230 Md. 635, 637; *Wood v. Director,* 243 Md. 731, 733; *Carter v. Director,* 10 Md. App. 247, 249.

13. *Stevenson v. State,* 4 Md. App. 1, 11; *Fabian v. State,* 3 Md. App. 270, 286; *Hartley v. State,* 4 Md. App. 450, 462.

14. *Jones v. State,* 241 Md. 599, 610.

15. [T]he essential ingredient is orderly expedition and not mere speed." *United States v. Ewell,* 383 U. S. 116, 120, quoting *Smith v. United States,* 360 U. S. 1, 10. "The prosecution was entitled to any reasonably needed time for preparation for trial, and also any reasonably needed time to conform with the trial court's calendar of criminal cases . . ." *Jones v. State,* 241 Md. 599, 610.

— if the claim of "speedy trial" denial is clearly frivolous — if the passage of time is patently not inordinate — we are relieved of all necessity to make further analysis.[16.] If this threshold of "constitutional dimension" has not been crossed, there is no need for the delicate weighing of social values in order "to balance the right of the individual to obtain a speedy trial against the right of society to punish those who are properly shown to have committed a crime against it." *Barnett v. State*, 8 Md. App. 35, 38-39. There is no need to look to the subtle interaction of the three factors: (1) the length of delay, (2) reason for delay, and (3) prejudice to the accused. There is no need to consider the question of waiver, hereinbefore discussed.

In the present case, the appellee has successfully crossed the threshold of "constitutional dimension." A lapse of eighteen months between indictment and arraignment is significant and it is worthy, under the Sixth Amendment, of further analysis. It is, furthermore, clear that the source of the delay was the State. It was the

---

16. That the determination of whether there is a delay of "constitutional dimension" is a preliminary, threshold question is made clear in *Jones v. State*, 10 Md. App. 420. Judge Orth, speaking for the Court, there logically pointed out that that question is distinct from and preliminary to the subsequent question of whether a delay is "substantial," a consideration to be discussed hereinafter in this opinion. He there said, at 428:

"In oral argument his counsel agreed that the only period chargeable to the State was of 4 months duration, from the end of February to the end of June. *We do not find that this period is one of constitutional proportion but even if it were, it is less than substantial,* * * *" (Emphasis supplied)

See also *Brown v. State*, 10 Md. App. 462, 466, where we held that a delay of two months was not "of constitutional dimension." In *Greathouse v. State*, 5 Md. App. 675, 685, we said of a three-month period, which was all that was chargeable to the State:

"We think it clear that this period is not one of constitutional dimension. *Stevenson v. State, supra.* There being no unconstitutional delay, whether there was or may have been prejudice to the appellant's case is not determinative of the denial of a speedy trial."

See also *Fabian v. State*, 3 Md. App. 270, 286, for the position that where the delay is caused by the conduct of the accused, "there may be no delay at all in the constitutional sense." In *King v. State*, 5 Md. App. 652, 666, a two-month delay was held to be "not a delay in the constitutional sense."

State which was unable to produce the appellee for speedier arraignment, although he was at all times somewhere within its custody. It was the State which was unable to effect service of the indictment upon the appellee, which notice would have imposed upon him a mutual responsibility for getting his case to trial lest he waive his right to complain. The hurdle of "constitutional dimension" having been cleared and waiver not being dispositive, we turn to the more complex consideration of the interaction of (1) the length of the delay, (2) the reason for the delay, and (3) the prejudice to the accused.

## THE PRESUMPTION-GENERATING QUESTION OF "SUBSTANTIAL" DELAY

At a hearing upon a motion to dismiss charges because of an alleged denial of the right to a speedy trial, the burden of proof (that is, the risk of non-persuasion of the hearing judge) is initially upon the accused, as he is the moving party. He may produce initially, and the State may produce by way of response, any evidence available on the questions of length of delay, reason for delay, and waiver. In the weighing of these questions, no presumptions are thrown into the balance on either side of the scales. Because of its more speculative nature, however, the question of prejudice cannot be so straightforwardly handled.

Traditionally, three approaches have been used to arrive at a determination of prejudice.[17] One approach is that it is incumbent upon the accused to make a showing of actual prejudice [18] or at least a strong possibility of prejudice resulting to him or to his defense from the delay. Another approach is that prejudice will be conclusively presumed and necessarily follows from long delay.[19] The middle position, and that used in this State, is that a

---

17. Note, 51 Va.L.Rev. 1587, 1591-1592.
18. *United States ex rel. Von Cseh v. Fay*, 313 F. 2d 620, 624 (2d Cir. 1963).
19. *Petition of Provoo*, 17 F.R.D. 183, 198, 203 (D. Md.) (alternative holding); *United States v. Chase*, 135 F. Supp. 230, 233 (N.D. Ill. 1955).

certain quantitative and qualitative degree of delay gives rise to a rebuttable presumption of prejudice and will shift the burden of going forward with the evidence from the accused to the State. Before that critical point is reached, there rests upon the accused, as the moving party, the burden of persuading the hearing judge either (1) that he has suffered actual prejudice, in cases where he has made no demand for a speedy trial, or (2) that he has suffered the strong possibility of prejudice, in cases where he has made a demand for a speedy trial.[20] Once that critical point has been reached, however, the presumption of prejudice arises and the burden of going forward with the evidence shifts to the State. That critical point on the delay scale where the presumption arises and where the burden shifts has been denominated the point of "substantial" delay.[21] To rebut the presumption, the State must persuade the hearing judge that the accused suffered no serious prejudice beyond that resulting from ordinary and inevitable delay.[22]

---

20. *Stevenson v. State*, 4 Md. App. 1, 14; *Frazier v. State*, 5 Md. App. 88, 92-93; *King v. State*, 6 Md. App. 413, 418; *Wilson v. State*, 8 Md. App. 299, 306; and *Caesar v. State*, 10 Md. App. 40, 43.

21. The concept of "substantial" delay, at least as articulated in those specific terms, first came into our case law in *Stevenson v. State*, 4 Md. App. 1, 13-15. It was taken from *Williams v. United States*, 250 F. 2d 19, 21-22 (D.C. Cir. 1957); *United States v. Banks*, 370 F. 2d 141, 144-145 (4th Cir. 1966); and *Bond v. United States*, 233 A. 2d 506, 512 (D.C. App. 1967).

22. In the *Williams* case, which is the progenitor of the presumption-generating concept, Judge Bazelon, the author of the opinion, did say:

"To sustain its right to try the accused seven years after the crime, the Government must show two things, in my view: (1) that there was no more delay than is reasonably attributable to the ordinary processes of justice, and (2) that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay."

He made it very explicit, however, that as to the first burden of rebuttal by the Government, he was writing for himself alone and not for the other two members of the Court. He pointed out that the rest of the Court joined him only for the second and more limited proposition that the presumption of prejudice imposed upon the Government the burden of showing that the accused "suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay."

Indeed, it is only logical for the State to be required to rebut only that as to which a presumption has arisen. It would make no sense to hold that in the face of "substantial" delay, the State must

In the present case, the hearing judge appeared clearly to rule not that the appellee had shown any actual prejudice or even "a strong possibility of prejudice", but rather that the delay between indictment and arraignment was "substantial" and that a presumption of prejudice followed automatically therefrom. Our focus then, in making an independent, reflective constitutional judgment on the propriety of the lower court's ruling, is narrowed to the single question of whether the eighteen-month delay, on the facts of this case, was "substantial."

There is no precise measuring rod by which to determine when a delay becomes "substantial"; that deter-

show (1) that there was no more delay than is reasonably attributable to the ordinary processes of justice, *as well as* (2) that the accused suffered no serious prejudice thereby. Since the thrust of the Sixth Amendment is remedial rather than prophylactic, if the State can show that the accused suffered "no serious harm" by the delay, it is immaterial whether the State was "at fault" in causing the delay or not. The prime consideration is that of ultimate "harm."

The paramountcy of our remedial concern with "harm" over a prophylactic concern with "fault" is made clear by our corresponding emphasis in situations where the delay is less than "substantial." In those cases, we insist that at least "a strong possibility of prejudice" be shown, notwithstanding the fact that the delay may have been "purposeful or oppressive." *Stevenson v. State,* 4 Md. App. 1, 14; *Barnett v. State,* 8 Md. App. 35, 40; *Wilson v. State,* 8 Md. App. 299, 306; *Caesar v. State,* 10 Md. App. 40, 43. Thus, even "purposeful or oppressive" behavior will not justify the dismissing of an indictment in the absence of a showing of (or by analogy to the "substantial" delay situations, a presumption of) "prejudice" or "harm." As was said in *United States v. Banks,* 370 F. 2d 141 (4th Cir. 1966), at 144-145, cited in *Fabian v. State,* 3 Md. App. 270, at 286 n. 7:

"While we cannot justify the District Attorney's inactivity during the ten-month interval between the indictment and Bank's release from state confinement, in appraising the right to a speedy trial we are required to look to the possible prejudice the defendant has suffered as well as to the length of the delay and the reason for it."

Indeed, since it would be only rarely that a delay would be found to be "substantial" in the first instance in the absence of some "fault" by the State, it would, therefore, in the vast majority of cases, become an empty gesture to seem to afford the State the opportunity to rebut that which, almost patently, could not be rebutted. Thus, the only proper rebuttal burden imposed upon the State by a finding of "substantial" delay would be one with respect to the thereby-presumed prejudice.

Also implicit in the oft-repeated principle from *Stevenson, supra, Barnett, supra, Wilson, supra, Caesar, supra,* is that even "purposeful or oppressive" delay is not enough, *per se,* to render the delay "substantial."

mination must be made in the light of the facts and circumstances of each particular case.[23] Just as the other two factors of (1) reason for delay and (2) prejudice interact with the factor of "length of delay" in determining the ultimate constitutional question of whether a speedy trial has been denied, so too, to the extent to which evidence as to them has been adduced, by whomsoever produced, do they bear upon the intermediate and procedural question of whether that delay is "substantial." We begin, therefore, with the proposition that the period of delay, even as to this intermediate issue of whether it shall be deemed "substantial," must be considered only in relation to the other two factors. If our words about relativity mean anything, it is that in the algebra of the Sixth Amendment even a greater delay coupled with non-oppressive and non-purposeful motivation and coupled with a lesser likelihood of prejudice may well yield a product less "substantial" than would a significantly shorter delay coupled with oppressive or purposeful motivation and coupled with a greater likelihood of prejudice.[24]

This Court has been called upon to determine whether a particular delay amounted to a "substantial delay" on twelve prior occasions. A rapid survey of those decisions indicates clearly that the "length of delay" is not the key factor in making such a determination. On nine occasions we found that the delay was not "substantial." On two occasions, we found that it was. On another occasion, we found it necessary to send the case back for further evidentiary findings with respect to the other factors which have so vital a bearing on any determination.

Reviewing each case on its peculiar circumstances, we held in *Britton v. State,* 10 Md. App. 70, that a delay of four months was "not substantial"; in *Graham v. State,*

---

23. *Wilson v. State,* 8 Md. App. 299, 306; *Caesar v. State,* 10 Md. App. 40, 43.

24. "The length of the delay, however, appears to be significant principally as it affects the legitimacy of the reasons for delay and the likelihood that it had prejudicial effect." *Dickey v. Florida,* 398 U. S. 30, 48 (concurring opinion by Brennan, J.).

6 Md. App. 458, that a delay of eight months was "not substantial"; in *Johnson v. State,* 4 Md. App. 648, that a delay of eleven months was "not substantial"; in *Wilson v. State,* 8 Md. App. 653, that a delay of eleven months was "not substantial." On the other hand, in *Caesar v. State,* 10 Md. App. 40, we held, under all of the circumstances in that case, that a delay of twelve months was "substantial." We there said, at 49, "It is not the length of the delay here, but the reasons for it that are significant." However, we held in *Brown v. State,* 4 Md. App. 141, that a delay of fourteen months was "not substantial"; in *Frazier v. State,* 5 Md. App. 88, that a delay of sixteen months was "not substantial." On the other hand, in *Wilson v. State,* 8 Md. App. 299, we held, under all of the circumstances in that case, that a delay of seventeen months was "substantial." We there said, at 312, "As indicated, we think the delay in trial was substantial, not primarily because of the duration of the time elapsed, but in the light of the particular and unusual circumstances surrounding such delay which were existent in this case." In contrast to the *Wilson* holding, however, we held in *King v. State,* 6 Md. App. 413, that a delay of twenty-one months was "not substantial." The holding in *King* was in a "due process" context, but the appraisal of "substantial delay" would not be dissimilar to that in a "speedy trial" context. We held in *Stevenson v. State,* 4 Md. App. 1, that a delay of twenty-one months and thirteen days was "not substantial" and in *State v. Williams,* 6 Md. App. 5, that a delay of twenty-three months was "not substantial." In *Barnett v. State,* 8 Md. App. 35, in a case where the length of the delay was one of eight months, we could not determine whether the delay was "substantial" or "not substantial" in the absence of factual findings below as to all of the other factors which must enter into the ultimate equation. We there remanded the case for further evidentiary findings.[25]

---

25. The holdings in the Federal Courts on the question of what is "substantial" are not disparate from our own. In *Williams v. United States,* 250 F. 2d 19, it was a delay of seven years that was

It is, therefore, axiomatic that the mere running of the calendar will not be viewed in isolation and has little significance divorced from the questions of motivation for delay and prejudice, which are, respectively, its cause and its effect. It is the more minimal values which we assign to the second and third factors in the case now before us that persuade us that the court below was in error in finding that the delay was "substantial," which finding was the predicate for its ultimate ruling·that the indictment be dismissed for the lack of a "speedy trial."

## THE REASON FOR DELAY

Since the only delay which is computed in the first instance is that chargeable to the State, an examination of the reason for that delay becomes, by definition, an examination of motivation on the part of the State or, in many of the cases, "fault" on the part of the State, either in affirmatively bringing about the delay or in inadvertently permitting it to occur.

At one end of the "reason" spectrum, where the State takes affirmative delaying action for good and valid cause, such as where a key prosecution witness is temporarily missing, a vital laboratory analysis must be completed, a principal must be tried before an accessory may be proceeded against, an examination as to incompetency or insanity must be made, etc., there is little difficulty in resolving either the intermediate "substantiality" issue or the ultimate "speedy trial" issue in favor of the State.[26]

---

held to be "substantial." In *United States v. Banks,* 370 F. 2d 141, a delay of ten months was held to be "not substantial," despite the feeling of the Court that "We cannot justify the District Attorney's inactivity during the ten-month interval between the indictment and Bank's release from State confinement." In *Bond v. United States,* 233 A. 2d 506, a delay of ten months was held to be "not substantial."

26. A caveat, in this regard, is sounded by Justice Brennan in his concurring opinion in *Dickey v. Florida,* 398 U. S. 30, at 52:
"To determine the necessity for governmental delay, it would seem important to consider, on the one hand, the intrinsic importance of reason for the delay, and, on the other, the length of the delay and its potential for prejudice to interests protected by the speedy-trial safeguard. For a trivial objective, almost any delay could be reasonably avoided. Similarly, lengthy delay, even in the interest of realizing an important objective, would be suspect."

At the far end of the "reason" spectrum, it redounds to the clear detriment of the State, on either the intermediate or the ultimate issue, where the motivation of the State is shown to be "purposeful or oppressive." This is the only category of motivation which has been clearly condemned by the Supreme Court. In *Pollard v. United States,* 352 U. S. 354, the Court said, at 361, "The delay must not be purposeful or oppressive. It was not here. It was accidental. . ." In *United States v. Ewell,* 383 U. S. 116, at 120, the Court reiterated the "purposeful or oppressive" language from *Pollard.*[27]

In *State v. Murdock,* 235 Md. 116, 124, the Court of Appeals adopted the language "purposeful or oppressive" from *Pollard.* Not without irregularity, this Court has adhered to the same adjectives, "purposeful or oppressive," as those descriptive of that delay-causing behavior on the part of the State which will not be condoned.[28]

There is nothing in the present case to suggest that either the attitude or the course of conduct of the State

---

27. See Note, "The Lagging Right to a Speedy Trial," 51 Va. L. Rev. 1587, at 1587:

> "Although the sixth amendment unreservedly provides that 'in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . .,' the Supreme Court in *Beavers v. Haubert* stated that the right is consistent with delays and dependent upon circumstances. These circumstances were defined and limited by a later opinion, *Pollard v. United States,* to purposeful and oppressive delays, a test which tends to focus on the intentional nature of the wrong rather than on the nature of the injury. These limits appear to have been confirmed in the recent Supreme Court decision of *United States v. Ewell.*"

In *Petition of Provoo,* 17 F.R.D. 183, 202, aff'd mem., 350 U. S. 857 (D.C. Md.), Judge Thomsen condemned a lengthy (ten year) delay, where it could be said that the Government had made "a deliberate choice for a supposed advantage." That language, however, would appear to be comprehended within the adjective "purposeful."

Some courts use the term "sinister" (*Barker v. Commonwealth,* 385 S.W.2d 671, 674, Kentucky 1964) and "culpable" (*Fleming v. United States,* 378 F. 2d 502, 504, 1st Cir., 1967). Some courts speak of "vexatious" delay, but this term would appear to be comprehended within the adjective "oppressive." See Note, "The Right to a Speedy Trial," 20 Stanford L.Rev. 476, 480-481.

28. *Allen v. State,* 1 Md. App. 249, 253; *Kelly v. State,* 2 Md. App. 730, 735; *Brown v. State,* 4 Md. App. 141, 145; *King v. State,* 5 Md. App. 652, 667; *Smith v. State,* 11 Md. App. 631, 634.

was "purposeful or oppressive." The State was certainly not motivated by "bad faith"; nor was any action or inaction by the State "a deliberate choice for a supposed advantage." In terms of assessing "fault," the behavior of the State clearly would not fall under the interdict of "purposefulness" or "oppressiveness."

It is rather in the middle ranges of the "reason" spectrum that analysis becomes less certain. Here the "fault," if any, on the part of the State is one of omission, rather than of commission. Here we are concerned not with an affirmative delay-causing decision, either for good cause or for bad cause, but rather with pure inaction. Even within the "inaction" band, there are gradations. On the one hand, there is deliberate and knowing inaction in the face of clear and repeated demands for action. This is the brand of conduct contemplated by our addition of the adjectives "capricious," [29] "arbitrary" [30] and "unreasonable" [31] to the lexicon of not-to-be-condoned behavior. This is the category of prosecutorial conduct which was pivotal in our decisions in *Wilson v. State,* 8 Md. App. 299, and *Caesar v. State,* 10 Md. App. 40, and the decision of the Court of Appeals in *Jones v. State,* 241 Md. 599. In each of those cases, there was a persistent refusal to set the case in for trial in the face of repeated demands, requests and efforts by the accused to bring the case on for trial. In the present case, there is no analogy to the situations prevailing in *Wilson, Caesar* or *Jones.* The attitude of the State here cannot be described as "capricious," "arbitrary" or "unreasonable." There is

---

29. *Brown v. State,* 2 Md. App. 388, 395; *Dubs v. State,* 2 Md. App. 524, 531; *Fabian v. State,* 3 Md. App. 270, 286; *McCargo v. State,* 3 Md. App. 646, 649; *Thompson v. State,* 4 Md. App. 31, 34; *Bryant v. State,* 4 Md. App. 572, 575; *Johnson v. State,* 4 Md. App. 648, 655; *Frazier v. State,* 5 Md. App. 88, 92; *Graham v. State,* 6 Md. App. 458, 461. See also 22 A C.J.S., *Criminal Law,* Section 467 (4), cited with approval in *Jones v. State,* 241 Md. 599, 608.

30. *McCargo v. State,* 3 Md. App. 646, 649; *Graham v. State,* 6 Md. App. 458, 461.

31. *State v. Long and Nelson,* 1 Md. App. 326, 339; *Manning v. State,* 2 Md. App. 177, 181; *Brown v. State,* 2 Md. App. 388, 395; *Tillery v. State,* 3 Md. App. 142, 146; *McCargo v. State,* 3 Md. App. 646, 649.

nothing to suggest that the conduct of the State was "more to meet the convenience of individuals," "more than mere negligence," or an exhibit of "unpardonable neglect and total indifference to the rights of the appellant"—the sort of motivational attitude we deplored in *Caesar*, at 49-50.

The case at bar presents us not with an instance of deliberate, knowing inaction but rather with an instance of what might be characterized as inadvertent inaction or, perhaps, as halting and less-than-diligent action. On three occasions, the State made a bona fide effort to summons the appellee for arraignment in Prince George's County. The third of these efforts was finally successful. It was clearly developed that during that questioned period, the appellee was highly mobile within the correctional system. He was awaiting trial in Montgomery County, was transferred to the Clifton T. Perkins State Hospital for evaluation as to possible criminal insanity, was transferred back to Montgomery County, was convicted of the charges pending against him in that county and was, directly or indirectly, transferred to the Patuxent Institution for evaluation as to possible defective delinquency.

The court below professed to be "completely baffled by the fact that court orders out of this court, writ of habeas corpus ad testificandum, are not served on a defendant that is within the custody of the Maryland authorities." The court found that the delay was "inexcusable" and "that the State had the defendant incarcerated in various institutions, and that it is certainly not that difficult over a period of eighteen months to locate an accused in the State of Maryland."

Even if we were to accept the lower court's characterization of the prosecutorial inaction or imperfect action, we point out that there is no case where such lesser and more venial "fault" — of the inadvertent and unknowing variety — has been catalytic in resolving either the intermediate issue of "substantiality" or the ultimate issue of "speedy trial denial" against the State. We feel that such conduct, on the facts of this case, at least, falls

within that contemplated by the Supreme Court as "accidental" in *Pollard v. United States, supra,* when it said, at 361, "The delay must not be purposeful or oppressive. It was not here. It was accidental. . ." We reiterate the words of Chief Judge Murphy in *State v. Hunter,* 10 Md. App. 300, at 304-305, when he pointed out that although the federal procedures may permit the dismissal of an indictment for "unnecessary delay in bringing a defendant to trial," such "phraseology [is] broader in scope and more encompassing than that underlying the constitutional right to a speedy trial . . . [and] . . . the law of Maryland, while recognizing the denial of the constitutional right to a speedy trial as a valid ground for the court's dismissal of an indictment, does not countenance such a dismissal upon the court's own motion for mere 'unnecessary delay' or 'in furtherance of justice.' "

In measuring the "reason for delay" factor in this case, we find any "fault" on the part of the State to have been minimal.

### THE QUESTION OF PREJUDICE

Similarly, we assign a minimal value to the "prejudice" factor in this case.

The Supreme Court in *United States v. Ewell, supra,* at 120, set forth the complex of important values served by the Sixth Amendment's guarantee of a "speedy trial":

> "This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself."

See also *Wilson v. State,* 8 Md. App. 299, 307-308.

The "harm" protected against falls into two distinct categories: (1) prejudice to the person of the accused and (2) prejudice to the defense of the accused.[32]

---

32. *Fabian v. State,* 3 Md. App. 270, 287-288; *Stevenson v. State,* 4 Md. App. 1, 15; *State v. Oglesby,* 8 Md. App. 415, 416; Note, "The Lagging Right to a Speedy Trial," 51 Va.L.Rev. 1587, 1593-1594.

In this case, there was an absolute dearth of evidence relating to any possible prejudice to the person of the accused. Since the prime consideration, in this regard, is "undue and oppressive incarceration prior to trial," it is highly relevant whether an accused is incarcerated under the charge on which trial has been delayed, on the one hand, or whether he is either free on bail or recognizance or incarcerated for some independent reason, on the other hand.[33] In the present case, it is clear that the appellee was for all of the eighteen months in question detained in Montgomery County awaiting trial there on independent charges, incarcerated pursuant to conviction on those charges or detained at the Patuxent Institution for evaluation as to possible defective delinquency. He suffered not one day of "undue incarceration" while awaiting arraignment and trial upon the indictment in this case.

There is no oppressive incarceration. Nor is there in this case anything remotely approaching the "anxiety" problem dealt with by the Supreme Court in *Klopfer v. North Carolina, supra.* In that case, a college professor of zoology, with no record of prior conviction, had the pendency of an indictment hanging over his head under circumstances that might "subject him to public scorn and deprive him of employment, and almost certainly . . .force curtailment of his speech, associations and participation in unpopular causes," p. 222.[34] There is simply no evidence, whatsoever, of any prejudice to the person of the appellee in this case.

Nor is there any significant evidence of prejudice to his defense. There is no proof of (or even allegation of) the loss of alibi or other defense witnesses. There is no proof or allegation of the loss of any documentary or other physical evidence. There is simply the bald allegation of the appellee himself that he cannot now remem-

33. *State v. Long and Nelson,* 1 Md. App. 326, 339; *Fabian v. State,* 3 Md. App. 270, 288; *Stevenson v. State,* 4 Md. App. 1, 15; *Wilson v. State,* 8 Md. App. 299, 307.
34. See *Stevenson v. State,* 4 Md. App. 1, 15; *Fabian v. State,* 3 Md. App. 270, 288.

ber his whereabouts on the day of the alleged offense. In view of the fact that his own confession gave rise to the placing of the charges against him, the likelihood that he might have remembered that he was somewhere else at the time of the offense is highly improbable.

Finding no evidence of prejudice to the person of the appellee and finding little credible evidence of prejudice to the defense of the appellee, we, therefore, find that the "harm", if any, caused by the delay between indictment and arraignment was minimal.

## THE INTERACTION OF "FAULT" AND "HARM" ON "SUBSTANTIALITY"

Having found both minimal "fault" and minimal "harm," we further find, upon our independent constitutional review, that the length of delay in this case was, therefore, "not substantial."

## THE ULTIMATE "SPEEDY TRIAL" QUESTION

Having found the delay to have been "not substantial," we turn to the ultimate issue of whether the right to a "speedy trial" was denied. Upon that ultimate issue we hold that the interaction of 1) a "not substantial" length of delay, 2) mere inadvertence or negligence, at most, as reason for the delay, and 3) no showing by the appellee (as required in the absence of the presumption) of a strong possibility of prejudice,[35] does not amount to a denial of the right to a "speedy trial." The motion to dismiss the indictment against the appellee should not, therefore, have been granted.

## THE RIGHT OF THE STATE TO APPEAL

The appellee advances an additional procedural argu-

---

35. Since the appellee was apparently unaware of the pending charges against him and was, therefore, in no position to demand a prompt disposition of them, we will assume, for purposes of this case, that he was entitled to the favored position of one who, having made a demand, need only show "a strong possibility of prejudice" rather than the unfavored position of one who, not having made a demand, need show "actual prejudice."

ment that the State has no right to appeal from the dismissal of an indictment, where the dismissal is based upon a denial of the right to a speedy trial rather than upon a defect in the indictment itself. Quickly dispositive of his contention is the statement of the Court of Appeals in *Harris v. State*, 194 Md. 288, where the Court said, in speaking of the right to appeal from a decision on the speedy trial issue, at 294:

> "This appeal may be compared to the sustaining of a demurrer to an indictment, which is a final ruling. The State can appeal, and if the judgment is reversed the case will be remanded for further proceedings."

See also the decision of the Court of Appeals in *State v. Murdock*, 235 Md. 116, cert. den. 379 U. S. 914, and the decisions of this Court in *State v. Long and Nelson*, 1 Md. App. 326, cert. den. 390 U. S. 983; *State v. Williams*, 6 Md. App. 5; *State v. Oglesby*, 8 Md. App. 415, and *State v. Cavey*, 11 Md. App. 274. In each of those five decisions, the appellate court did not simply entertain the appeal by the State but reversed the finding of the court below that the right to a speedy trial had been denied and reinstated the case for trial. For all of the reasons previously discussed, we do likewise.

*Order dismissing the indictment reversed, and case remanded for further proceedings.*